James Rexford POWELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 71270.

Court of Criminal Appeals of Texas, En Banc.

Nov. 30, 1994.

Rehearing Overruled April 12, 1995.

Opinion Dissenting from Denial of Rehearing April 12, 1995.

**824**

Luis Dugas, Orange, for appellant.

Charles R. Mitchell, Dist. Atty., San Augustine, Robert Huttash, State's Atty., Austin, for State.

## OPINION

CAMPBELL, Judge.

At a trial held in the 1st District Court of Newton County in May 1991, a jury found appellant, James Rexford Powell, guilty of capital murder. *See* Tex.Penal Code § 19.03(a)(2). At the punishment phase of appellant's trial, the jury answered affirmatively the punishment issues submitted to them under Article 37.071(b),[1] and the trial court sentenced appellant to death. Direct appeal to this Court was automatic under Article 37.071(h). We now affirm.

Viewed in the light most favorable to the jury's verdict, the evidence at trial established that on October 6, 1990, appellant abducted the victim, a ten-year-old girl, from an antique mall in Jefferson County. Appellant then strangled the victim while in the course of sexually assaulting her. The victim's body was discovered later that day in Newton County. She was found with her hands tied together and a rope tied tightly around her neck, lying face down in a mud puddle. Semen was found in her vaginal cavity. After several witnesses identified appellant's motor home as having been in the vicinity of the place where the victim's body was found, appellant was arrested at his home in Orange County. Appellant does not challenge the sufficiency of the evidence supporting the finding of guilt or the assessment of punishment.

In ten points of error, appellant argues: that a prosecutor serving as a special assistant district attorney in Newton County in this case should have been disqualified; that appellant should have received a change of venue from Newton County; that evidence seized from appellant's motor home in Orange County, pursuant to a search warrant issued in Jefferson County, should have been suppressed; that the trial court abused its discretion in allowing testimony concerning DNA evidence from a witness who was not trained in population genetics and who lacked knowledge of a computer program which produced the evidence on which she based her testimony; and that the trial court abused its discretion in allowing evidence at the punishment phase concerning the subject matter of a prior criminal trial in which appellant was acquitted.

In points of error five and six, appellant argues that the trial court erred in refusing to disqualify Paul McWilliams, a special prosecutor for Newton County in this case. Appellant contends that McWilliams should have been disqualified under either of two provisions of the Texas Constitution.

The first such provision, Article 16, § 14, states, in relevant part, that "all district or county officers [shall reside] within their districts or counties." Appellant argues that assistant district attorneys are district officers, pursuant to *Bigham v. State*, 141 Tex. Crim. 332, 148 S.W.2d 835 (1941). Appellant further argues that McWilliams was not qualified to serve as a prosecutor in the 1st District Court, since he did not reside within the 1st Judicial District.

The second provision of the Texas Constitution cited by appellant, Article 16, § 40, states, in relevant part, that "[n]o person shall hold or exercise at the same time, more than one civil office of emolument." Appel-

---

1. At the time of appellant's trial, Article 37.071 provided in relevant part:
   (b) On conclusion of the presentation of the evidence [at the punishment phase], the court shall submit the following three issues to the jury:
   (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;
   (2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
   (3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.
   The record reflects that only issues (b)(1) and (b)(2) were submitted to the jury at appellant's trial.

lant argues that the position of assistant district attorney is a "civil office of emolument," within the ambit of Article 16, § 40, and cites as authority the case of *Irwin v. State*, 147 Tex.Crim. 6, 177 S.W.2d 970 (1944). Appellant argues that McWilliams was not qualified to serve as an assistant district attorney in Newton County because at the time McWilliams participated in appellant's trial, he was employed as an assistant district attorney in Jefferson County.[2]

■ The applicability of the constitutional provisions cited by appellant turn on whether McWilliams, acting as an assistant district attorney in Newton County, was an "officer" or an "employee." In *Aldine I.S.D. v. Standley*, 154 Tex. 547, 280 S.W.2d 578, 583 (1955), the Texas Supreme Court explained that "the determining factor which distinguishes a public officer from an employee is whether any sovereign function of the government is conferred upon the individual to be exercised by him for the benefit of the public largely independent of the control of others." *See also* 67 C.J.S. *Officers and Public Employees* § 8(b) (1978).

■ An assistant district attorney acts subject to the control and supervision of the district attorney. In our view, an assistant district attorney is not a public officer, but rather a public employee. Therefore, the constitutional provisions cited by appellant are inapplicable to the facts of this case.

The cases which appellant cites, *Bigham* and *Irwin*, are not controlling. In *Bigham*, this Court determined that a deputy supervisor of the oil and gas division of the Railroad Commission was an "officer" within the context of a statute making it illegal for an "officer" to accept a bribe. *Bigham* is distinguishable from the instant case, in that *Bigham* concerned the meaning of the term "officer" within the context of the bribery statute, as opposed to the constitution.

In *Irwin*, this Court addressed how one becomes a de facto officer for Article 16,

Section 40 purposes. In that case, two Houston police officers had executed a search warrant by acting as deputy sheriffs. *Irwin*, 177 S.W.2d at 972. Because they did not *continuously* exercise the duties of deputy sheriffs, but only used those positions to execute a single search warrant, this Court held that they were not de facto officers and thereby avoided the constitutional issue over their capacities as police officers and deputy sheriffs that could have arisen because of Section 40. *Id.* at 974.

This case is easily distinguished from *Irwin*. McWilliams, who served as an assistant district attorney for Jefferson and Newton counties, acted as a state employee and not as a de facto officer for both counties. Appellant's reliance on *Irwin* is therefore wholly misplaced. Points of error five and six are overruled.

In point of error ten, appellant argues that the trial court abused its discretion in refusing to grant his motion for change of venue. Appellant argues that he could not get a fair trial in Newton County due to pretrial publicity. Appellant makes this argument pursuant to the Sixth Amendment to the United States Constitution, Article 1, § 10 of the Texas Constitution, and Article 1.05 of the Texas Code of Criminal Procedure.

At the hearing held on appellant's motion for change of venue, appellant offered the following evidence in support of his motion: a videotape of news broadcasts by a Beaumont television station concerning the victim, the circumstances of her death, and appellant's alleged involvement in the crime; a series of newspaper articles from the *Beaumont Enterprise* which discussed the victim, her disappearance, the finding of her body, the arrest and charging of appellant, and information concerning a previous incident in Louisiana for which appellant had been tried and acquitted; statistics showing the size of the viewing audience of the Beaumont television stations in Newton County; statistics showing the number of Newton County sub-

---

2. The record shows that McWilliams was formally sworn and "deputized" as an assistant district attorney of Newton County by Charles Mitchell, the District Attorney in Newton County.

scriptions to the *Beaumont Enterprise;* and statistics showing the number of peremptory strikes and challenges for cause exercised by appellant at voir dire. In rebuttal, the State offered the testimony of four Newton County residents, all of whom testified that, in their opinion, the appellant could receive a fair trial in Newton County.

■ For an accused to receive a fair trial consistent with the right to an impartial jury, a jury must determine his guilt or innocence based on the evidence admitted at trial and not on the basis of information provided by the media. *Narvaiz v. State,* 840 S.W.2d 415, 428 (Tex.Crim.App.1992). A situation may arise, however, "in which pretrial publicity is so pervasive and prejudicial as to create a reasonable probability that an impartial jury cannot be empaneled even with the most careful voir dire." *Id.*

■ A presumption of prejudice does not arise simply because a case has been publicized in the media; jurors need not be completely uninformed concerning the facts of the case. *Id.* A defendant who seeks a change of venue has the burden of proving "the existence of such prejudice in the community that the likelihood of obtaining a fair and impartial jury is doubtful." *Nethery v. State,* 692 S.W.2d 686, 694 (Tex.Crim.App. 1985).

■ We review the trial court's decision, not to grant the appellant a change of venue, under an abuse of discretion standard, meaning the trial court's decision concerning venue will not be disturbed so long as it was within the realm of reasonableness given the facts presented to the trial court. *Narvaiz v. State,* 840 S.W.2d at 428. The videotape of television news broadcasts and newspaper articles introduced at the venue hearing by appellant indicate that the underlying facts and circumstances of this case were publicized by the Beaumont press during the week after the victim's death, almost four months before the venue hearing and eight months before appellant's trial. The record of the venue hearing does not indicate that

appellant offered any evidence that the facts and circumstances of this case were covered, to any extent, by the Newton County press. In addition, neither the victim nor appellant were residents of Newton County. Finally, the State presented four Newton County residents who testified that, in their opinion, appellant could receive a fair trial in Newton County. Given the foregoing, we believe the trial court's denial of appellant's motion for change of venue was within the realm of reasonableness. Point of error ten is overruled.

In point of error one, appellant argues that the trial court erred in denying his motion to suppress evidence seized by officers executing a search and arrest warrant in Orange County that was issued by a magistrate in Jefferson County. The record shows that Judge Larry Gist, a district judge in Jefferson County, acting as a magistrate, issued a search and arrest warrant in Jefferson County. The warrant authorized the arrest of appellant, the search of appellant's motor home, and the seizure of specified items from the motor home, including fingerprints, rope, blood, semen, hair, and clothing. A team of officers, consisting of officers from the Beaumont Police Department, the Orange County Sheriff's Department, the Newton County Sheriff's Department, and a Texas Ranger, executed the search and arrest warrant at appellant's residence in Orange County.

Appellant argues that by issuing a search warrant to take effect in Orange County, Judge Gist exceeded his authority as magistrate. Appellant argues that the scope of authority exercised by a district judge when he acts as a magistrate is limited to the boundaries of the county in which his judicial district is located, pursuant to *Ex parte Clear,* 573 S.W.2d 224, 228 (Tex.Crim.App. 1978).

The State argues that Judge Gist had jurisdiction to issue the search warrant. First, the State argues that Judge Gist had jurisdiction to issue the warrant because appellant could have been tried in Jefferson County, since appellant abducted the victim in

Jefferson County. The State also argues, alternatively, that, if Judge Gist lacked jurisdiction to issue the search warrant, the officers who executed the warrant held a good faith belief that the warrant was based on probable cause, and that the search was valid pursuant to the good faith exception to the warrant requirement, as provided in Article 38.23(b) of the Texas Code of Criminal Procedure.[3] At the motion to suppress hearing, the State also argued that the search was valid pursuant to the automobile exception to the warrant requirement.

In the instant case, assuming *arguendo*, as appellant contends, that Judge Gist lacked authority to issue a search warrant to be executed in Orange County, the search of appellant's motor home was nevertheless valid pursuant to the automobile exception to the warrant requirement.[4] *See Amos v. State*, 819 S.W.2d 156, 160 (Tex.Crim.App. 1991). An invalid search warrant does not preclude inquiry into whether the search can be upheld under a warrant exception. *Id.*

■■■ Under the automobile exception, an officer may conduct a warrantless search of a motor vehicle if the officer has probable cause to believe the vehicle contains evidence of a crime. *Amos v. State*, 819 S.W.2d at 161. The exception extends to all types of motor vehicles. The requisite factor for implementation of the automobile exception is the inherent mobility of a vehicle. *See California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). In *Carney*, government agents searched, without a warrant, a motor home parked in a lot in downtown San Diego. *Id.* The defendant argued that he held a sufficient expectation of privacy in his motor home to require procurement of a search warrant by the agents prior to searching the motor home, and that the automobile exception to the warrant requirement did not apply. The Supreme Court rejected

that argument, holding that the expectation of privacy in a motor home was low due to the extensive government regulation of motor vehicles, and that the automobile exception did apply to the motor home. *Id.* Pursuant to *Carney*, we conclude that the automobile exception to the warrant requirement applies to appellant's motor home in the instant case.

■■■ At the hearing held on appellant's motion to suppress, Officer Frank Coffin of the Beaumont Police Department testified that he assisted in preparing, and signed, the affidavit on which the search and arrest warrant issued by Judge Gist was based. Officer Coffin also testified that he, along with his team of officers, executed the search of appellant's motor home and seized the items listed in the affidavit and search warrant.

The affidavit submitted to Judge Gist shows the following: that two eyewitnesses had seen appellant's distinctive-looking motor home being driven on their property in Newton County on the afternoon of October 6, 1990, the day the victim was abducted; that two additional eyewitnesses had observed appellant's motor home being driven from underneath a bridge at Cow Creek, where the victim's body was eventually found, on the afternoon of October 6, 1990; that appellant had been at the antique mall from which the victim disappeared on the morning of October 6, 1990; and that, according to appellant's wife, late on the evening of October 7, 1990, appellant had been contemplating leaving his residence in an attempt to evade police.

The officers who searched appellant's motor home had probable cause to believe that the motor home contained evidence of a crime, as evidenced by the affidavit. Appellant's motor home was used primarily as a vehicle, not as a residence. In fact, on the

---

3. Tex.Code Crim.Proc. Art. 38.23(b) provides:
   It is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith upon a warrant issued by a neutral magistrate based on probable cause.

4. If the trial court's decision is correct on any theory of law applicable to the case, it will be sustained on appeal; especially if the decision concerns the admissibility of evidence. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990).

date of the victim's disappearance, appellant was seen driving the motor home in the vicinity of the place where the victim's body was found. Therefore, the search of appellant's motor home was justified by the automobile exception to the warrant requirement, as explicated in *California v. Carney*. Point of error one is overruled.

In point of error number four, appellant argues that the trial court erred in refusing appellant's request to poll the jury concerning an article which appeared in the May 25, 1991 edition of the *Beaumont Enterprise*. The article concerned the testimony of State witnesses at a hearing held to determine the admissibility of DNA evidence. Appellant argues that the article inaccurately recounted the testimony from the hearing and that it prejudiced appellant by infringing on his right to an impartial jury.

The record shows that, prior to trial, but after the jury had been empaneled and sworn, appellant asked the trial court to poll the jurors to determine whether any of them had read the above-referenced article. The court refused, noting that the jury had previously been instructed not to read any newspaper articles or watch any television reports concerning the case. The record shows that the court repeated that instruction to the jury at the outset of the trial. Also, during the individual voir dire, each juror who was selected was individually instructed by the trial court not to read any newspaper articles or watch any television reports concerning the case. Nevertheless, appellant claims that the trial court's refusal to poll the jury to determine whether any of the jurors had read the *Enterprise* article was error, because it "denied [him] the opportunity to initiate even a preliminary inquiry into whether any jurors had been exposed to the article."

None of our precedent is directly on point with the issue raised by appellant in this point of error.[5] Appellant cites the cases of *Flores v. State*, 472 S.W.2d 146, 148 (Tex. Crim.App.1971), and *Brown v. State*, 516 S.W.2d 145, 146 (Tex.Crim.App.1974), as support for his argument that the trial court should have asked the jurors whether they had read the *Enterprise* article. Those cases, however, do not require a trial court to poll the jury simply because a newspaper article appears concerning the trial and the defendant requests a jury poll.

The trial court in the instant case admonished the jury on numerous occasions not to read any newspaper articles concerning the case. In *Haas v. State*, 498 S.W.2d 206, 211 (Tex.Crim.App.1973), we upheld the trial court's refusal to grant a mistrial based on the jury's alleged exposure to a newspaper article concerning the trial. Our decision in *Haas* was based on repeated admonishments given by the trial court to the jury, similar to those given by the trial court in the instant case.

In the instant case, the trial court was faced with a decision: it could either deny appellant's request for a jury poll concerning the contents of the *Enterprise* article, or it could grant appellant's request, poll the jury, and risk exposing the jury to the existence of the article and its contents for the first time. We believe the trial court decided correctly. By refusing to poll the jury about the *Enterprise* article, and by reiterating its admonishments, the trial court did its best, under the circumstances, to preserve the integrity of the jury panel. Point of error four is overruled.

In points of error two and three, appellant argues that the trial court erred in admitting portions of the testimony of a State witness, Julie Cooper. Specifically, appellant argues

5. *But cf. Bell v. State*, 724 S.W.2d 780, 797–98 (Tex.Crim.App.1986). In *Bell*, articles about the appellant's alleged involvement in a capital murder appeared in local newspapers during the jury selection process. The trial court refused to question the seven jurors who had already been selected to serve about whether they had read the articles. The appellant in that case argued that the trial court's refusal to question those jurors about the articles constituted error. We disagreed, citing the appellant's failure to raise the issue of jury misconduct in a motion for new trial.

that the trial court should not have allowed the testimony of Cooper, a molecular biologist, concerning probabilities of matching DNA banding patterns because: 1) the witness had not been qualified as an expert in the field of population genetics, and 2) the witness' testimony was based on a computer program which had not been properly authenticated.

Appellant's argument concerning Cooper's lack of expertise in the field of population genetics has not been preserved for review. To be preserved for appellate review, a matter must be raised at trial by contemporaneous objection. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Crim.App.1990). In the instant case, the record indicates that appellant's objection at trial to Cooper's testimony did not concern her lack of qualifications in the field of population genetics. Therefore, that argument is overruled.

Appellant also failed to preserve error related to authentication of the computer program. The record reveals that the trial court admitted Cooper's testimony concerning the results produced by the computer program upon the condition that the computer program be authenticated by the next State witness.[6] The record further reveals that the computer program was not authenticated by the next State witness, Daniel Garner.

▆▆▆▆ Under the doctrine of "conditional relevancy," a trial judge may admit evidence that lacks authentication on the condition that the party offering the evidence authenticate it, or "connect it up," at a later time. *See Fuller v. State*, 829 S.W.2d 191, 198–99 (Tex.Crim.App.1992); S. Goode et al., *Texas Practice: Guide to the Texas Rules of Evidence: Civil and Criminal* § 104.2 (1993). If sufficient "connecting" evidence does not appear by the close of the proponent's evidence, the opposing party must renew his original objection by a motion to strike the conditionally admitted evidence. *Id.* Failure to do so constitutes waiver by the opposing party for purposes of appeal. *Id.*

▆▆▆▆ In the instant case, the record indicates that appellant failed to renew his original objection to Cooper's testimony after Garner, or any other State witness, failed to provide testimony authenticating the computer program. Because appellant failed to renew his objection, the error is not preserved. Points of error two and three are overruled.

In points of error seven through nine, appellant argues that the trial court abused its discretion by failing to exclude, at the punishment phase, evidence of a prior attempted murder for which appellant had been tried and acquitted in Louisiana. Appellant argues that the admission of such evidence violated his rights under the double jeopardy clauses of the Fifth Amendment to the United States Constitution,[7] Article 1, § 14 of the Texas Constitution,[8] and Article 1.11 of the Texas Code of Criminal Procedure.

Lucille Jackson, a Louisiana resident, testified that, on August 2, 1984, appellant came to her home and attempted to rape her. When she resisted, appellant choked her and then shot her "through the temples [sic]."

---

6. At trial, the following exchange occurred during the testimony of Julie Cooper, State witness:

   Prosecutor: So, did you multiply all those numbers out on the computer?
   Cooper: Yes, the computer did the multiplying.
   Prosecutor: And what did you come up with?
   Defense counsel: Objection, Your Honor. He's still not authenticated the program in the computer.
   Prosecutor: We'll tie—we'll—we'll tie that up with the next witness.
   The Court: The objection's overruled. You may answer the question.

7. The Fifth Amendment to the United States Constitution provides: "No person shall.... be subject for the same offence to be twice put in jeopardy of life and limb."

8. Article 1, § 14 of the Texas Constitution provides:

   "No person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction."

**830**

As a result of this conduct, appellant was later tried for and acquitted of attempted murder.

■■■ Pursuant to Article 37.071(a) of the Texas Code of Criminal Procedure,[9] a trial court has wide discretion in admitting evidence, including extraneous offenses, relevant to the jury's determination of a capital defendant's deathworthiness. *Kemp v. State*, 846 S.W.2d 289, 307 (Tex.Crim.App.1992). Extraneous offenses are admissible at the punishment phase of a capital trial whether adjudicated or unadjudicated. *Id.*

■■■ The purpose of the punishment phase of a capital murder trial differs substantially from the purpose of the guilt/innocence phase of a capital or non-capital trial. Likewise, the reasons why the State offers extraneous offenses vary depending upon the type of proceeding in which they are submitted. At the guilt/innocence phase of a trial, an extraneous offense may be offered for any number of reasons. *See* Tex.R.Crim.Evid. 404(b). The ultimate goal, though, for the State at guilt/innocence is to prove that the accused committed the charged offense. At the punishment phase of a capital murder trial, however, extraneous offenses are usually offered to show that the defendant is a future danger to society. To encourage the proliferation of all evidence relevant to a capital defendant's deathworthiness, the burden of proof on the State with regards to extraneous offenses is lower when they are offered at the punishment phase of a capital trial. *See Adanandus v. State*, 866 S.W.2d 210, 233–34 (Tex.Crim.App.1993). When offering an extraneous offense at the punishment phase of a capital trial, the State need not prove all of the elements of the extraneous offense. *Spence v. State*, 795 S.W.2d 743, 759 (Tex.Crim.App.1990). Nor need the State prove beyond a reasonable doubt that the defendant committed the extraneous of-fense. *Adanandus v. State*, 866 S.W.2d at 234.

■■■ The federal double jeopardy clause of the Fifth Amendment prohibits consecutive prosecutions of an individual for the same offense. *United States v. Wilson*, 420 U.S. 332, 339, 95 S.Ct. 1013, 1019, 43 L.Ed.2d 232 (1975). In the instant case, appellant was not retried for the same offense for which he was previously tried and acquitted in Louisiana; he was instead tried for and convicted of the capital murder of a ten-year-old girl. Evidence of the extraneous offense was offered by the State at the punishment phase of appellant's trial merely to assist the jury in its determination of appellant's deathworthiness, specifically to determine whether appellant posed a future danger to society, not to prove beyond a reasonable doubt that appellant committed attempted murder of Ms. Jackson in Louisiana.

We conclude that the double jeopardy clause of the Fifth Amendment was not violated in the instant case by the trial court's decision to admit Jackson's testimony concerning appellant's extraneous offense. We therefore reject appellant's federal double jeopardy argument.

■■■ Concerning appellant's Texas constitutional claim, appellant has failed to provide sufficient argument or authority as to the protection provided him under Article 1, § 14 of the Texas Constitution, or how the protection offered him under that provision differs from that of its federal counterpart. Therefore, pursuant to Texas Rules of Appellant Procedure 74 and 210, appellant's Texas constitutional claim is overruled. *Narvaiz v. State*, 840 S.W.2d 415, 432 (Tex.Crim.App. 1992).

■■■ Appellant also claims that the trial court's admission of his extraneous miscon-

---

**9.** Article 37.071(a) of the Texas Code of Criminal Procedure provides:

Upon a finding that the defendant *is* guilty of a capital offense, the court shall conduct a separate sentencing proceeding to determine whether the defendant shall be sentenced to death or life imprisonment. The proceeding shall be conducted in the trial court ... before the trial jury as soon as practicable. In the proceeding, evidence may be presented ... as to any matter that the court deems relevant to sentence.

duct for which he was tried and acquitted in Louisiana violated Article 1.11 of the Texas Code of Criminal Procedure, which provides that "[a]n acquittal of the defendant exempts him from a second trial or a second prosecution for the same offense." In the instant case, appellant was not retried for the offense for which he was acquitted in Louisiana. Nor does the punishment phase of appellant's capital murder trial constitute a "second trial or second prosecution" for that misconduct. We therefore reject appellant's claim based on Article 1.11 of the Texas Code of Criminal Procedure. Points of error seven through nine are overruled.

The judgment of the trial court is AFFIRMED.

OVERSTREET, J., concurs in the result.

CLINTON, Judge, concurring.

"... [T]here is no way in which [a district or county attorney] can, *under our Constitution,* hold two offices of profit at one and the same time."

*Eastland County v. Hazel,* 288 S.W. 518, at 521 (Tex.Civ.App.—El Paso 1926), writ refused.[1]

In my view, just as the district or county attorney who employs one for compensation, an assistant county or district attorney holds and exercises a "civil office of emolument" within contemplation of Article XVI, § 40 and § 33, Constitution of the State of Texas.[2] Thus the assistant district attorney from Jefferson County whom appellant sought to "disqualify" from acting as "special prosecutor" in Newton Court surely held a "civil office of emolument" in Jefferson County.

But the pivotal question is whether as "special prosecutor" the assistant district attorney from Jefferson County would also be holding or exercising a "civil office of emolument" in and for Newton County. In my judgment, the law applicable to record facts dictates the conclusion that he would not.

I

Early on the Court accepted and sanctioned the "settled practice" throughout the country that without the necessity of formal appointment "[c]ounsel other than the regular prosecuting attorney may appear to prosecute or assist in the prosecution of a cause on behalf of the State."[3] Indeed, the Legislature recognized and acknowledged the

---

1. All emphasis throughout this opinion is mine unless otherwise indicated.

2. See Article V, § 21, *id.* (respective duties of prosecuting attorneys representing the State shall be regulated by Legislature); Article 2.01, V.A.C.C.P. (district attorney shall represent the State in all criminal cases in district court); V.T.C.A. Government Code, §§ 41.102, 41.103 and 41.106 (prosecuting attorney may employ such assistant prosecuting attorneys as deemed necessary for proper and efficient operation and administration of the office; an assistant prosecuting attorney must be licensed to practice law in Texas and *shall take the constitutional oath of office;* one may perform *all duties imposed by law upon the prosecuting attorney,* receiving such compensation *fixed by the employing prosecuting attorney subject to approval of affected commissioner courts* ). One taking the constitutional oath of office must swear *inter alia* to "faithfully execute the duties of the office of [assistant district attorney of Jefferson County] of the State of Texas[.]" Article XVI, § 1(c).

3. The cases are legion. One of the earliest is *Burkhard v. The State,* 18 Tex.App. 599 (1885) (no

statutory prohibition against "practice always in this State" to permit participation of socalled "special counsel," so not error to overrule objection to allowing district attorney "to avail himself of assisting counsel in the prosecution, both in the conduct and argument of the case" ). *Id.,* at 618–619.

Since then the term "special prosecutor" has been used loosely to embrace an attorney who is not "appointed" and thus need not take the requisite oath of office, as well as one who is. Compare *Ex parte Powers,* 487 S.W.2d 101, at 104 (Tex.Cr.App.1972) (counsel not appointed or sworn, but employed by family of deceased to assist in prosecution with consent of district attorney; issue already decided against applicant in *Powers v. Hauck,* 399 F.2d 322, at 323–326 (5th Cir.1968)), with *Reed v. State,* 503 S.W.2d 775 (Tex.Cr.App.1974) (district attorney-elect appointed "special prosecutor" by *court* at request of outgoing incumbent not "disqualified" to prosecute).

A long line of authorities is to same effect, again without the Court distinguishing public prosecuting attorneys from private counsel. See, e.g., *Ballard v. State,* 519 S.W.2d 426, at 428 (Tex.Cr.App.1975) (not violative of due process

practice when it expressly included "special prosecutors" within the ambit of its admonition that "the primary duty of all prosecutors, *including any special prosecutors,* [shall be] not to convict, but to see that justice is done." Article 2.01, V.A.C.C.P., as enacted by Acts 1965, 59th Leg. vol. 2, Ch. 722, p. 317. *Lopez v. State* 628 S.W.2d 77, at 80 (Tex.Cr.App.1982) (every special prosecutor is thus enjoined by statute that justice be done).

Furthermore, while in few instances it was mistakenly done, sounder authorities cited at note 3 make clear that the lawyer who appears in a particular case "at the request of the district attorney or ... the complainant's family," need not be "appointed" or "employed" for compensation in the sense of being formally designated by an official vested with authority to do so under the statute. Cf. Article 2.07(a), V.A.C.C.P. (appointed attorney pro tem) and §§ 41.102 and 41.106, Government Code (employed assistant district attorney). See, e.g. *Ballard v. State,* supra.[4]

Moreover, as the same authorities and others discussed herein make clear, an attorney assisting an incumbent prosecutor as "special prosecutor" does not become a "public employee" by virtue of agreeing to and actually assisting in the prosecution. By judicial definition through sanctioning our settled practice this Court and others delineated the status and role of "assisting counsel." If compensated at all, a privately employed "special prosecutor" looks to his client for remuneration; a publicly employed "special prosecutor" who holds "a civil office of emolument" in another jurisdiction should look to

for private "special prosecutor" to assist district attorney where case is tried and also district attorney where offense committed) reversed on rehearing for other ground; *Lopez v. State,* 437 S.W.2d 268 (Tex.Cr.App.1968) (no abuse of discretion to permit same attorney in *Ex Parte Powers,* supra, to participate as "special prosecutor" with consent of same district attorney; need not take constitutional oath of office as prerequisite to appearing in case); *Figueroa v. State,* 375 S.W.2d 907 (Tex.Cr.App.1964) (no abuse of discretion in overruling *objection* to private counsel assisting as "special prosecutor" on ground that he also represented injured party in criminal case arising out of same transaction); *Bingham v. State,* 163 Tex.Cr.R. 352, 290 S.W.2d 915, at 918–919 (1956) (under general rule stated *ante,* no abuse of discretion to overrule *motion* to preclude district attorney of another judicial district from assisting in prosecution at request of local district attorney); *Phillips v. State,* 159 Tex. Cr.R. 286, 263 S.W.2d 159, 160 (1953) (allowing over *objection* "special prosecutor" to participate in trial not error under general rule, citing 15 Tex.Jur. 288, § 5); *Davis v. State,* 148 Tex.Cr.R. 499, 188 S.W.2d 397, at 399–400 (1945) (no statutory inhibition against any lawyer, with consent of district attorney or assistant, from participating in prosecution); *Emerson v. State,* 54 Tex. Cr.R. 628, 114 S.W. 834, at 835–836 (1908) (attorney assisting county attorney on account of absence of assistant county attorney not "disqualified" by prior brief casual discussion with accused about fee to represent him). See also *Fitzgerald v. State,* 722 S.W.2d 817, at 820 (Tex. App.—Tyler 1987), *affirmed on other grounds* 782 S.W.2d 876 (Tex.Cr.App.1990) (not error for assistant district attorney of Walker County to assist district attorney of Anderson Count at trial).

There is yet another category of putative prosecutors: "volunteer counsel." That is, one who is not employed or paid a fee for his services, but volunteers his services as counsel to assist the State in the prosecution of a particular case. After cautionary comments the Court ultimately left the matter to the discretion of the trial court. *Loshe v. State,* 160 Tex.Cr.R. 561, 272 S.W.2d 517, at 519, 520 (1954); see also *Nacol v. State,* 590 S.W.2d 481, at 483–484 (Tex.Cr.App.1979).

The Court makes no meaningful distinction between "special prosecutors" and "volunteer counsel" in terms of functions performed in assisting the incumbent prosecutor on behalf of the State. See 31 Tex.Jur.3d §§ 56 and 58, at 641–644, 645–646 (1994); *Nacol v. State,* supra; see also Exhibit in *Powers v. Hauck,* supra, at 324 (Findings of Fact II) and at 325 (Conclusions of Law (1), (2) and (3)).

4. The false notion of "appointment" aside, the cases teach also that the trial judge is not required by law to give prior consent or approval. The rule developed by caselaw is that an incumbent prosecutor may freely consent to participation by a "special prosecutor" (in the true sense of the term). See, e.g., *Davis v. State,* 148 Tex.Cr.R. 499, 188 S.W.2d 397, at 399–400 (1945) (no statutory inhibition against any lawyer, with consent and approval of district attorney, or his assistant, from participating in prosecution of any accused). Of course, upon objection or motion from accused the trial court is expected to exercise its judicial discretion to resolve the resultant dispute. See germane cases cited in note 3, *ante.*

its commissioners court for his continuing remuneration.[5]

## II

## A

In the instant cause the matter was verbally raised by appellant at the threshold of what appears to have been the first scheduled pretrial hearing on other motions. No testimony or evidence was tendered; there is only the colloquy summarized in the margin.[6] Subsequently the trial court entered an order denying the motion.[7]

In his brief, from other cited parts of the record, appellant informs us (and the fact is undisputed) that the attorney in question was then "the First Assistant District Attorney in charge of criminal law matters to the District Attorney for Jefferson County[.]" *Id.*, at 11–12. He asserts, "In lieu of prosecuting this case himself, [the Newton County district attorney] delegated his prosecutorial responsibilities to [him] ... pursuant to Government Code Section 41.103[.]" *Id.*, at 12–13.[8] Appellant also points out that the delegate "took 'a large role in the prosecution of this case,'" enumerating the witnesses he examined and cross-examined. *Id.*, at 13.

Appellant contends that there is no "*statutory* authority authorizing [the delegate] to appear in this capacity." He argues that any prosecution by an assistant district attorney "simultaneously exercising more than one civil office of emolument is void and the judgment cannot stand." *Id.*, at 14–15.[9]

---

5. In what surely must to be in recognition and avoidance of holding dual "civil offices of emolument," Article 2.07(b) provides where an appointed attorney pro tem is also an attorney for the State, "the duties of the appointed office are additional duties of his present office, and he is not entitled to additional compensation." Presumably the same policy would be applied to a nonappointive "special prosecutor" similarly situated, as here.

6. Appellant objected to the assistant district attorney of Jefferson Court "representing the State in Newton County [because] he doesn't have standing or authority to appear in Newton County as an Assistant District Attorney for Newton County or in any other capacity without ... the duly elected District Attorney disqualifying himself or for some other reason being unable to prosecute this case." S.F. Motion to Disqualify 1.

The district attorney himself responded that the assistant district attorney "has sworn and taken an oath as Assistant District Attorney for the First Judicial District of Texas—those papers are on file here. That was done prior to any participation in this county in this case ... before it was presented to the Grand Jury." "Therefore," he concluded, "he is here properly as an Assistant District Attorney for this district." *Id.*, at 1–2.

Appellant rejoined, "[T]here is no authority providing for an assistant district attorney out of one judicial district to appear as an assistant district attorney in another judicial district. There's no authority for him to act in this district." *Id.*, at 2.

Later, seizing the moment near the close of the scheduled hearing, the assistant district attorney from Jefferson County ventured his view of the legal situation, *viz:*

"... [I] believe that [the District Attorney] could enlist any help that he wanted, and the only requirement is that that person, to actually participate in the trial, is licensed to practice law [in Texas]."
Counsel for appellant informally stipulated the fact that the assistant district attorney was so licensed, but insisted that he still should be disqualified on account of his "unique position as Chief Prosecutor for the Jefferson County District Attorney's office," adding, "He is still drawing his salary from Jefferson County, and I suppose he is going to draw a salary from Newton, if he hasn't already done so." *Id.*, at 3. It must be observed, however, there is no record support for the latter supposition.

7. The court took the matter under advisement and directed appellant to prepare and file a written motion to that effect. S.F. *id.*, at 2, 3. Counsel complied and submitted therewith a presentation of authorities. Tr. 13 ff. Thereafter the court overruled the motion with written order. Tr. 121. The matter was later alluded to by the district attorney during another pretrial hearing; he reiterated the essence of his statement at the first hearing. S.F. *Id.*, at 6–7.

8. See paraphrase of provisions of § 41.103 and related sections, *ante*, at 824, n. 1.

9. Appellant seeks support for his contention and argument from *Chambers v. Baldwin*, 282 S.W. 793, 795 (Comm.App.1926), and *Irwin v. State*, 147 Tex.Crim. 6, 177 S.W.2d 970, at 974 (1944).

While the majority pretermits discussion of *Chambers v. Baldwin*, supra, I am satisfied that the decision does not bear on the issue under consideration for it deals with the constitutionality of a statute that purported to allow an elected

The State takes the position that appellant waived the issue by failing to present supporting evidence. State's Brief, at 10. Nevertheless, it proceeds to address the merits, and after reviewing several decisions cited in note 3, *ante*, concludes there is no known case condemning participation of the First Assistant District Attorney for Jefferson County in this trial. *Id.*, at 11.

### B

In my opinion, the First Assistant District Attorney of Jefferson County was absolutely correct when he opined that the district attorney of Newton County was empowered to "enlist any help that he wanted, and that the only requirement is that that person, to actually participate in the trial, is licensed to practice law [in the State of Texas]," as he indisputably was. S.F. Motion to Disqualify, at 3.

As "special prosecutor" enlisted by the district attorney of Newton County, that he was not "appointed" by the judge of the court in Newton County is of no legal consequence, and that he was sworn in as Assistant District Attorney for the First Judicial District is but a superfluity. Neither is required by law. Articles 2.01 and 2.07, V.A.C.C.P., are applicable only when the elected district attorney is disqualified to prosecute a particular case *et cetera*, and the district judge appoints a special prosecutor under those provisions. *Ballard v. State*, supra, at 428.[10]

Therefore, the question still remains whether § 40 precluded the assistant district attorney holding a "civil office of emolument" in Jefferson County from serving as "special prosecutor" in Newton County.

Regarding his taking the oath of office in Newton County as an inadvertent, redundant formality, I believe it may correctly be said he never held or exercised a "civil office of emolument" in and for Newton County. While abstractly the office of assistant district attorney is one of "emolument," in that obviously "compensation was authorized by law to be paid for services rendered" by an assistant district attorney, there is no evidence in this record that he was to or did receive any such "pecuniary profit, gain or advantage" on account of his service in Newton County. Cf. *Irwin v. State*, supra, 177 S.W.2d at 973. So far as shown here, as "special prosecutor" he was expected to subsist on compensation from Jefferson County. See note 5 and accompanying text, *ante*, at 833. In these circumstances I would hold that while serving as "special prosecutor" in this case, the assistant district attorney for Jefferson Court was neither holding nor ex-

district attorney to exercise his duties in a county that was no longer in the district where he resided. *Id.*, at 795.

*Irwin v. State*, supra, did *not* hold that Houston police officers in question who claimed to be acting as Special Deputy Sheriffs of Harris Court were "simultaneously exercising more than one civil office of emolument," as appellant would have it in his brief at 14. To the contrary, the Court concluded "that the two named officers were *not* deputies sheriff de facto, and their purported acts as such were without authority of law." *Irwin*, supra, at 974.

*Irwin* is of significant interest here, however; the Court was firm in its legal conclusion that each position is a "civil office of emolument" within the meaning of Article XVI, § 40, *viz:*

"Compensation being authorized by law to be paid for services rendered by policemen and deputies sheriff renders such offices those of emolument, under the provisions of the Constitution mentioned. Hence the named officers could not at the same time be both policemen and deputies sheriff de jure or de facto."
*Id.*, at 973. There is no perceivable distinction between a Houston police officer and a Harris County deputy sheriff, on the one hand, and an assistant district attorney for Jefferson or Newton County, on the other, within contemplation of § 40. Each holds a civil office of emolument. In my view, however, the First Assistant District Attorney for the former never became an assistant district attorney for the latter de jure or de facto. See *post* at 834.

10. It is merely a happy coincidence that presumptively the "special prosecutor" had taken the constitutional oath of office when he became an assistant district attorney for Jefferson County, pursuant to Government Code, § 41.103(a). As an attorney licensed to practice law in this State, he was *eligible, qualified* and made available to serve as "special prosecutor" in Newton County regardless of his position in Jefferson County, subject, of course, to constrictions of §§ 40 and 33.

ercising a "civil office of emolument" in Newton County.[11]

Accordingly, for reasons given, I concur in the disposition of points of error five and six; otherwise I join only the judgment of the Court.

MEYERS, J., joins.

BAIRD, Judge, dissenting.

Believing the collateral estoppel doctrine prohibits the admission of evidence of an offense for which one has been acquitted, I respectfully dissent to the resolution of the seventh, eighth and ninth points of error.

## I.

As a general rule extraneous offenses are irrelevant and inadmissible. *Castillo v. State,* 739 S.W.2d 280, 289 (Tex.Cr.App.1987); *and, McCann v. State,* 606 S.W.2d 897, 899–900 (Tex.Cr.App.1980). However, Tex.Code Crim.Proc.Ann. art. 37.071 provides for the introduction of any evidence the trial judge deems relevant at the punishment phase of a capital murder trial. Therefore, *relevant* extraneous offenses may be admissible at the punishment phase of a capital murder trial. *Harris v. State,* 827 S.W.2d 949 (Tex.Cr.App. 1992); *Kemp v. State,* 846 S.W.2d 289, 307

(Tex.Cr.App.1992); *Allridge v. State,* 762 S.W.2d 146, 161–162 (Tex.Cr.App.1988); *and, Briddle v. State,* 742 S.W.2d 379, 391 (Tex. Cr.App.1987). However, for an extraneous offense to be relevant, the State must prove that an offense was committed and that the accused was its perpetrator. *Kemp,* 846 S.W.2d at 307. *See also, Harris,* 827 S.W.2d at 961. This is so because under art. 37.071 the State is required to connect the defendant to the extraneous offense. *Kemp,* 846 S.W.2d at 307.

## II.

To determine whether the extraneous offense was barred by the collateral estoppel doctrine we first turn to *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In *Ashe,* six men were robbed at a poker game. Ashe and three others were arrested and charged with the robberies. A jury acquitted Ashe of one robbery and, over his objection, Ashe was tried and convicted of the robbery of a second complainant.[1] The Supreme Court held an issue is precluded by collateral estoppel only if, in light of the entire record, the previous jury necessarily decided the issue against the State. The Court stated:

> Where a previous judgment of acquittal [is] based upon a general verdict ... a

---

11. Not raised by either party and apparently generally overlooked is a provision included by amendment to § 40, *viz:*

> "... It is further provided that a nonelective State officer may hold other nonelective offices under the State ..., if the other office is of benefit to the State of Texas ..., and there is no conflict with the original office for which he receives salary or other compensation."

S.J.R. No. 29, Acts 1971, 62nd Leg., p. 4133, also revising § 33.

The Legislature enacted implementing legislation. See now Government Code, Chapter 574, §§ 574.001 and 574.002 of which provide that if a proper finding is made by the appropriate officer, here the criminal district attorney for Jefferson County, that the nonelective officer "satisfied Article XVI, § 40," he may properly receive compensation for "holding the additional office."

Because the question is not presented for our decision, I simply note those more recent expressions of public policy concerning the matter here

for whatever consideration they are worth in resolving the issue in this cause.

1. At the first trial the State's evidence identifying Ashe was weak:

> Two of the witnesses ... could not identify [Ashe] as one of [the robbers]. Another of the victims ... positively identified each of the other three men accused of the holdup, but could say only that [Ashe's] voice "sounded very much like" that of one of the robbers. The fourth participant in the poker game did identify [Ashe], but only by his "size and height, and his actions".

*Ashe,* 397 U.S. at 438, 90 S.Ct. at 1191. At the second trial the same witnesses gave substantially stronger identification testimony. Further, the State declined to call one of the witnesses "whose identification testimony at the first trial was conspicuously negative." *Id.,* 397 U.S. at 439–440, 90 S.Ct. at 1192.

court [is required] to examine the record ... and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the [appellant] seeks to foreclose from consideration.

*Id.*, 397 U.S. at 444–447, 90 S.Ct. at 1194–1196. *See also, Wright v. Whitley*, 11 F.3d 542 (5th Cir.1994). The Supreme Court held the jury in Ashe's first trial determined that Ashe did not participate in the robbery and that relitigation of the issue was barred by collateral estoppel. *Ashe*, 397 U.S. at 447, 90 S.Ct. at 1196.

In *Stuart v. State*, 561 S.W.2d 181 (Tex.Cr. App.1978), we addressed a similar issue.[2] Stuart was charged with aggravated rape and asserted the defense of consent. The trial judge admitted extraneous evidence of a previous rape for which Stuart had been acquitted. *Id.* Relying upon the Supreme Court's opinion in *Ashe*, we reversed:

> ... The prosecutrix alleged rape and the appellant defended on consent. We feel that any application of an exception to the rule against admission of extraneous offenses ... must necessarily be to an occurrence *which has not already been conclusively established by a verdict of acquittal to have not been an extraneous offense in the first place.* The prosecution should not be allowed an exception when they have failed to come within the ambit of the general rule.

*Stuart*, 561 S.W.2d at 182 (emphasis added). *See also, Drew v. State*, 719 S.W.2d 388, 390 (Tex.App.—Houston [1st Dist.] 1986).

Although the majority fails to consider, mention, discuss or distinguish *Ashe* or *Stuart*, these cases are clearly controlling. To be admissible in the punishment phase of a capital trial, all extraneous evidence must be "relevant to sentence." Tex.Code Crim. Proc.Ann. art. 37.071(2)(a). However, extraneous evidence "cannot be relevant to sentence ... unless the State also presents evidence that, if believed, establishes that the

defendant himself committed the extraneous misconduct." *Harris*, 827 S.W.2d at 961. Therefore, the extraneous evidence in the instant case was relevant only if the State established that appellant committed the offense. In other words, the instant jury was presented with the same issue as the jury in appellant's earlier trial, i.e., his guilt of attempted murder. Consequently, relitigation of appellant's guilt, having once been determined by a valid and final judgment of acquittal, was barred by *Ashe*, 397 U.S. at 443, 90 S.Ct. at 1194, *and Stuart*, 561 S.W.2d at 182.

### III.

Relying on *Adanandus v. State*, 866 S.W.2d 210 (Tex.Cr.App.1993); *and, Spence v. State*, 795 S.W.2d 743 (Tex.Cr.App.1990), the majority states:

> ... To encourage the proliferation of all evidence relevant to a capital defendant's deathworthiness, the burden of proof on the State with regards to extraneous offenses is lower when they are offered at the punishment phase of a capital trial. When offering an extraneous offense at the punishment phase of a capital trial the State need not prove all of the elements of the extraneous offense. Nor need the State prove beyond a reasonable doubt that the defendant committed the extraneous offense.

Majority op., 898 S.W.2d at 830, (citations omitted). However, neither *Adanandus* or *Spence* are controlling because those holdings, as well as the authority cited therein, are specifically limited to the admission of "*unadjudicated* extraneous offense[s]." *Adanandus*, 866 S.W.2d at 233–234 (Emphasis added.); *Spence*, 795 S.W.2d at 759; *and, Ramirez v. State*, 815 S.W.2d 636, 653 (Tex. Cr.App.1991). In the instant case, the trial judge admitted evidence of an offense for which appellant had been acquitted, i.e., an *adjudicated* offense. Therefore, *Adanandus* and *Spence*, do not control the instant case.

---

**2.** The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution is applicable to the States through the Fourteenth

Amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

Furthermore, I disagree that the State's purpose in admitting the extraneous offense was not to prove "appellant committed attempted murder," but "merely to assist the jury in its determination of appellant's deathworthiness, specifically to determine whether appellant posed a future danger to society." Majority op., 898 S.W.2d at 830. This is a distinction without a difference. Clearly, whatever relevancy the extraneous offense had on appellant's deathworthiness was dependent on appellant's guilt of that offense. Without proof of appellant's guilt of the extraneous offense, such evidence was not relevant and provided no assistance in the jury's determination of appellant's deathworthiness. Therefore, notwithstanding the majority's attempt to distinguish the purposes for the admission of such evidence, it was incumbent upon the State to prove appellant's guilt of the attempted murder, an offense for which he had been acquitted.

## IV.

The issue of appellant's guilt for the offense of attempted murder was determined by appellant's acquittal of that offense. Consequently, relitigation of appellant's guilt for the attempted murder in the instant case was barred by the collateral estoppel doctrine of the Double Jeopardy Clause of the Fifth Amendment. For these reasons, I respectfully dissent.

MILLER and MALONEY, JJ., join this opinion.

BAIRD, Judge, dissenting to Appellant's Motion for Rehearing.

In his fifth ground for rehearing appellant contends we erred in holding the extraneous offense for which he had been acquitted was admissible. This ground relates to the seventh, eighth and ninth points of error on direct appeal. *Ante*, 898 S.W.2d at 829–830. Although I dissented to the resolution of those points of error, *ante*, 898 S.W.2d 835 (Baird, J., dissenting), and while I continue to adhere to the beliefs stated in my dissent-

ing opinion, I would not ordinarily vote to grant rehearing absent some extraordinary circumstance. However, this case presents such a circumstance.

The majority opinion held the State does not have to prove an extraneous offense beyond a reasonable doubt. *Ante*, 898 S.W.2d 830; *citing, Adanandus v. State*, 866 S.W.2d 210, 233–234 (Tex.Crim.App.1993). However, this is no longer the law. In *Harrell v. State*, 884 S.W.2d 154 (Tex.Cr.App.1994), we held that, to be admissible, the State must prove an extraneous offense beyond a reasonable doubt. *Id.*, 884 S.W.2d at 154. *See also, George v. State*, 890 S.W.2d 73 (Tex.Cr. App.1994).

Although *Harrell* and *George* are non-capital cases, that fact is insufficient to distinguish them from the instant case. Capital defendants do not receive less protection than non-capital defendants. To the contrary. Because capital punishment is qualitatively different from any other punishment, the Eighth Amendment requires a greater degree of reliability in the jury's determination that death is the appropriate punishment. *Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976). *See also, Jurek v. Texas*, 428 U.S. 262, 276, 96 S.Ct. 2950, 2958, 49 L.Ed.2d 929 (1976); *and, Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (decided in conjunction with *Branch v. Texas*). Consequently, the burden of proof may not be less in a capital case than in a noncapital case.

In denying appellant's motion for rehearing, we forego the opportunity to reconcile this case with *Harrell* and *George* and the opportunity to avoid the inevitable confusion that will confront the bench and bar as a result of these irreconcilable opinions.

For these reasons, I would grant appellant's fifth ground for rehearing. Because the Court fails to do so, I respectfully dissent.