**Opinion issued December 21, 2021**



In The

# Court of Appeals

For The

# First District of Texas

————————————————

## NO. 01-20-00211-CR

————————————————

## CHARLES LEE HENDERSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 405th District Court
Galveston County, Texas
Trial Court Case No. 17-CR-1202

## MEMORANDUM OPINION

In a single issue, Charles Lee Henderson contends the trial court erred in failing to poll the jury about their possible exposure to a newspaper article about his trial that was published on the day the jurors began deliberations. We affirm.

## BACKGROUND

A grand jury indicted Henderson for capital murder. In 2017, Henderson was involved in a confrontation that turned fatal. Three men, Nathaniel Boykins, Harry Zeno, and Anthony Sonnier drove in Boykins's car to Abdul Thompson's home, where they found Thompson and Henderson standing outside. Boykins claimed that Thompson owed him $200. For some reason, Sonnier, in the front passenger seat, and Henderson started to argue. Boykins, in the driver's seat, handed cash to Sonnier to give to Henderson; Henderson saw Sonnier reaching for something and shot Sonnier eleven times.

Henderson was tried in February 2020. The State presented its case over two days; the defense did not present any evidence or witnesses and rested on the afternoon of the second day of trial. That afternoon, before releasing the jury, the trial court advised them: "Please remember my instructions that I've given you. Don't talk to anyone. I notice there was a newspaper reporter here in the courtroom today. Y'all may have not noticed. Please refrain from doing any online research for local news and try not to read the paper in the morning."

The following morning, outside of the presence of the jury, the trial court discussed with the attorneys for both sides an article that had appeared that morning in the local newspaper, the *Galveston Daily News*. The newspaper article is not a part of the record, but the trial court explained that it contained "a couple of

sentences" about an outstanding charge against Henderson that was unrelated to the case and had not been discussed at trial. Henderson's attorney noted that he had searched other media but didn't find coverage of the case in the *Houston Chronicle* or any local TV stations, but he moved for a continuance "unless we could find out from the jury whether or not they actually read the *Daily News*." He agreed with the trial court, however, that trying to find out whether the jury actually read the newspaper article "would bring more attention to it." He reiterated that, "[f]irst, [he]'d ask for a motion to continue based upon one article in the *Daily News*." The attorney for the State opposed the motion for continuance, and the trial court denied the motion, explaining that he had already instructed the jury "not to do any research, read any news articles, Internet articles" related to the case and that the day before he had again instructed the jury "not to pay any attention or read, specifically, local news." Unless a juror came forward to say that he or she had read the article or heard another juror discussing the article, the trial court explained, the trial would proceed, and he would not bring any further attention to the article. The jury was then brought in, was read the court's charge and their instructions, and heard closing arguments. The jury returned a verdict of not guilty on the charge of capital murder, but guilty on the lesser included offense of murder. Henderson was then sentenced to life imprisonment.

**DISCUSSION**

Henderson contends he was denied a fair and impartial jury because the trial court judge refused to poll the jury about whether they had read the *Galveston Daily News* article.

**Error was not preserved**

The State contends Henderson failed to preserve for appellate review the issue of polling the jurors because he never asked the trial court to poll the jurors about the newspaper article. Henderson contends that his defense counsel raised the complaint and timely asked to find out whether the jury had seen the newspaper article, but the trial court refused. We conclude that error was not preserved.

*Applicable Law*

To preserve a complaint for appellate review under Texas Rule of Appellate Procedure 33.1, the record must show that: (1) the complaining party made a timely and specific request, objection, or motion; and (2) the trial court either ruled on the request, objection, or motion or refused to rule and the complaining party objected to that refusal. TEX. R. APP. P. 33.1(a); *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003). A party's failure to properly object can result in the forfeiture of even a constitutional error. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). While no "hyper-technical or formalistic use of words or phrases" is required to preserve an error, the requesting party must still "let the trial judge know what he

4

wants, why he thinks himself entitled to it, and . . . do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009); *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992). A point of error on appeal must comport with the complaint made at trial. *See Pena*, 285 S.W.3d at 464. To make this determination, we consider the context in which the complaint was made and the parties' shared understanding at that time. *Id.*

*Analysis*

During the meeting to discuss the newspaper article outside the presence of the jury, the trial court gave each attorney the opportunity "to make a record." Defense counsel stated:

> I read the article; and the article did include certain extraneous offenses that were not entered into evidence during trial and would absolutely affect the minds of a juror if a juror were to read that before deliberation.
>
> I also searched in other media. The *Houston Chronicle* did not cover this case; and I don't believe any of the TV stations, the local Houston TV stations, covered the cases.
>
> However, I've read case law that if media were to pop up in the middle of trial, widespread media, it would be incumbent upon the Defense to ask for a motion to continue.
>
> I think there's just one article; but I think I have a duty to ask for a motion to continue based on that article, unless we could find out from the jury whether or not they actually read the *Daily News*.
>
> But again, as the Court talked about, that would bring more attention to it. Although they've been instructed not to read the press, there is always that possibility they could or they would.
>
> First, I'd ask for a motion to continue based upon one article in the *Daily News*.

The trial court then asked the State for its response, and the State opposed the motion to continue. The trial court, noting the instructions he had already given the jury not to pay attention to or read the local news, denied the motion to continue.

Here, defense counsel did not ask to poll the jury about whether they had seen the newspaper article. His only request was for a continuance, and his brief mention of trying to ascertain whether the jury actually read the article did not state the specific grounds for that request—if it was one—or otherwise bring the court's attention to any legal basis for polling the jury. Henderson therefore failed to preserve error and forfeited his complaint. *See* TEX. R. APP. P. 33.1(a); *Geuder*, 115 S.W.3d at 13; *Clark*, 365 S.W.3d at 339.

Henderson failed to preserve for appellate review the issue of polling the jury about the newspaper article. We overrule his sole point of error on appeal.

**Complaint lacks merit even if it had been preserved**

Even if defense counsel's request for a continuance "unless we could find out from the jury whether or not they actually read the *Daily News*" constituted a request to poll the jury that the trial court refused, there is no reversible error.

When a party asks the trial court to poll empaneled jurors about news coverage of the case, a trial judge is faced with the decision to deny the request and thereby preserve the integrity of the jury or grant the request and risk exposing members of the jury, for the first time, to the existence and contents of media coverage they might

not have seen. *Mays v. State*, 318 S.W.3d 368, 377–78 (Tex. Crim. App. 2010); *see also Powell v. State*, 898 S.W.2d 821, 828 (Tex. Crim. App. 1994). Media coverage of a trial does not create a presumption of juror prejudice. *Powell*, 898 S.W.2d at 826. And when a trial court instructs jurors not to consider evidence other than that presented at trial, we presume the jurors follow the trial court's instructions in the absence of evidence to the contrary. *See Simon v. State*, 374 S.W.3d 550, 552 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). A trial court's ruling on a party's request to poll empaneled jurors about news coverage is reviewed under an abuse-of-discretion standard. *See Mays*, 318 S.W.3d at 378.

As in *Mays* and *Powell*, the trial court admonished the jury multiple times not to conduct any outside research or read any news articles about the case. *See Mays*, 318 S.W.3d at 378; *Powell*, 898 S.W.2d at 828. Specifically:

- before voir dire, the trial court admonished the potential jurors: "We're going to ask you not to do any research. Please—I've had this happen last month. [S]omeone will do research and look up a *Galveston Daily News* or *Houston Chronicle* article related to one of the parties in the case or whatever. I'm going to ask you, please do not do that. The trial needs to be based upon evidence and testimony presented during the case, not based upon what some reporter wrote or what some reporter heard through the grapevine about a situation";

- once the jury was empaneled, the trial court again warned the jurors: "There's a very good chance that this—now that this case is being called to trial that there's going to be something about it in the newspaper. There's probably three main news sources here in Galveston County, those are the *Daily News*, *I-45 Now*, and sometimes the *Houston Chronicle* will cover something. Please refrain from perusing those news sources or any kind of local news sources this

7

week. Do your best. That way, you don't learn about something that may not even be relatively accurate whatsoever";

- after the first day of trial, the trial court reminded the jury: "Please remember all the instructions the Court gave you yesterday"; and

- at the end of the second day of trial, as discussed above, the trial court again reminded the jury: "Please remember my instructions that I've given you. Don't talk to anyone. I notice there was a newspaper reporter here in the courtroom today. Y'all may have not noticed. Please refrain from doing any online research for local news and try not to read the paper in the morning."

Henderson has not pointed to any evidence in the record to overcome our presumption that the jurors followed their instructions. *See Simon*, 374 S.W.3d at 552. The newspaper article is not a part of the record, but the trial court noted that it contained "a couple of sentences" about an outstanding charge against Henderson that was unrelated to the case and had not been discussed at trial. Henderson's attorney stated he did not think there had been any other media coverage of the case. Following *Mays* and *Powell*, given the brief media coverage of potentially prejudicial information, the trial court's numerous admonishments to the jury not to read news articles about the case, and the lack of evidence to overcome the presumption that the jury followed the trial court's instructions, the trial court did not abuse its discretion by declining to poll the jury rather than risk exposing the jury to the existence of the *Galveston Daily News* article. *See Mays*, 318 S.W.3d at 378; *Powell*, 898 S.W.2d at 828; *see also Simon*, 374 S.W.3d at 553. Even if the point of error had been preserved, we would overrule it on the merits.

8

## CONCLUSION

Because the issue of refusing to poll the jury was not preserved for appellate review, and even if it had been, the trial court did not abuse its discretion in refusing to poll the jury in this case, we affirm the trial court's judgment.

Gordon Goodman
Justice

Panel consists of Justices Goodman, Rivas-Molloy, and Farris.

Do Not Publish. TEX. R. APP. P. 47.2(b).