IN THE COURT OF CRIMINAL APPEALS

OF TEXAS





NO. AP-74,951






GUY LEN ALLEN, Appellant


v.


THE STATE OF TEXAS





ON DIRECT APPEAL

FROM TRAVIS COUNTY





 Keller, P.J., delivered the opinion of the Court in which MEYERS, KEASLER,
HERVEY, HOLCOMB, and COCHRAN, JJ., joined. WOMACK, J., filed a concurring
opinion in which MEYERS, JOHNSON, and COCHRAN, JJ., joined. JOHNSON, J.,
filed a concurring opinion in which PRICE, J., joined.


O P I N I O N



 Appellant and his girlfriend, Barbara Hill, lived together off and on from October of 2001
to April of 2002. They lived at Hill's home with her youngest daughter, nineteen-year-old Janette
Johnson. On April 2, 2002, Hill turned appellant out of the house. In the early hours of the next
morning, appellant returned to the house and engaged in a physical altercation with Hill. Johnson
called the police to report the assault. Police arriving on the scene minutes later found Hill and
Johnson dead from multiple stab wounds. Appellant ran out of the house; police caught and arrested
him later that evening.

 Appellant was charged with and convicted of the offense of capital murder. (1) On March 20,
2004, in accordance with the jury's answers to the special issues, he was sentenced to death. (2) Direct
appeal to this Court is automatic. (3) Appellant raises eight points of error. Finding no merit to
appellant's claims, we affirm his conviction and sentence.

I. GUILT

A. Mid-trial Publicity

 In his first point of error, appellant claims that the trial court erred in declining to inquire into
whether the jury read a mid-trial newspaper article or heard the "Sammy and Bob" radio show, and
whether they were affected by those events.

 The jury was seated and sworn and heard opening statements by both sides. Eleven witnesses
were called by the State. The next day, before any other proceedings in front of the jury, the defense
offered a newspaper article as an exhibit, requested that the court caution the jury against being
exposed to news stories, and asked the court to inquire as to whether any of the jurors had read the
article or heard the "Sammy and Bob Show" on the radio that morning. The trial judge admitted the
article into evidence and noted that he had already warned the jury and had given the jury written
instructions on the media twice. He said that he would admonish the jury again, but he thought it
was a bad idea to ask jurors in the midst of a trial whether they had violated his prior instructions. 
He said that if, at the end of trial, anyone believed that jury misconduct had occurred, an affidavit
could be requested then. He instructed the jury once more regarding the importance of refraining
from reading, viewing, or listening to media accounts of the case. Defense counsel thanked the
judge.

 Although appellant claims that the trial court erred in refusing his request to question the
jurors mid-trial about the complained-of publicity, appellant, at the time he made his request, failed
to state specific grounds for his request or otherwise bring to the court's attention the legal basis for
conducting a mid-trial inquiry of the jury. Because appellant did not comply with Texas Rule of
Appellate Procedure 33.1(a), he failed to preserve error. 

 Furthermore, appellant points to the trial court's suggestion that counsel obtain juror
affidavits at the end of trial if they thought juror misconduct occurred but complains that Texas Rule
of Evidence 606(b) disallows such affidavits. A juror is strictly prohibited by Rule 606(b) from
testifying about any matter or statement that occurred during jury deliberations or about the effect
of anything on the juror's mind. Nevertheless, the rule provides that a juror may testify whether any
outside influence was improperly brought to bear upon any juror. Newspaper articles and radio
shows are "outside influences," and Rule 606(b) would not prohibit the introduction of evidence that
the jurors had read the article or heard the radio program. Appellant could have determined at least
whether any jurors had read the article or heard the program. Having failed to seek affidavits from
the jurors to make this determination, he has failed to preserve any complaint regarding the trial
court's failure to question the jurors. 

 Moreover, appellant's claim fails on its merits. In Powell v. State (4), the defendant raised
virtually the same issue on appeal, arguing that the trial court erred in refusing to poll the jurors,
prior to trial but after they had been empaneled and sworn, about a newspaper article concerning the
testimony of State witnesses at a hearing on the admissibility of DNA evidence. Although the trial
court refused to poll the jury about the article, it admonished the jury on numerous occasions not to
read any newspaper articles concerning the case. (5) In upholding the trial court's refusal to poll the
jury, we stated that the trial court did its best, under the circumstances, to preserve the integrity of
the jury panel, reiterating its admonishments, although it refused to poll the jury . (6)

 The trial court repeated its admonishments to the jury but refused appellant's request to
question the jurors mid-trial about the newspaper article or radio show rather than risk exposing the
jury to the existence of the publicity and its contents for the first time. In doing so, the trial court,
like the court in Powell, preserved the integrity of the jury as best as it could, under the
circumstances. 

 Appellant's first point of error is overruled.

B. Extraneous Offense

 In his fourth point of error, appellant claims that the trial court erred in admitting evidence
of theft of money from the victim's purse. At trial, appellant objected to a photograph (7) of a purse
hanging on a doorknob, claiming that the purse was out of police custody for a week, that it would
be used to show bad acts on the part of the appellant, that it violated his motion in limine, and that
it was speculative, irrelevant, and there was no notice of it as an extraneous bad act. The State
argued that the purse evidence was not an extraneous offense. The trial court overruled appellant's
objection, saying that the evidence was too intricately interwoven with the facts of the case to be an
extraneous offense, that it may have shown motive, and that there was no unfair prejudicial value.

 A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. (8) 
A reviewing court should not reverse a trial court whose ruling was within the "zone of reasonable
disagreement." (9) 

 The trial court did not abuse its discretion in admitting the photograph of the purse. The
purse did not constitute an extraneous offense, and no evidence was adduced before the jury that
appellant stole anything from the purse. Police found the purse hanging in the master bedroom on
the closet doorknob, in the midst of the crime scene, and photographed it at the initial investigation
of the scene. It was within the zone of reasonable disagreement for the court to admit the
photograph. Appellant's fourth point of error is overruled.

II. PUNISHMENT

A. Article 37.071

 In his second point of error, appellant claims that he was denied due process by the "12-10
rule" of Article 37.071 §§ 2(d)(2) (10) and 2(f)(2). (11) Appellant argues that these two sections, in
conjunction with Article 37.071 § 2(a)(1), (12) deprive him of due process because the "12-10 rule":
(1) creates an impermissible risk of arbitrariness; (2) denies a defendant's right to individualized
sentencing; (3) denies a defendant's right to a fair and impartial jury; (4) prevents a defendant from
receiving effective assistance of counsel; and (5) has a coercive effect upon the jury. 

 We have repeatedly rejected constitutional challenges to the "12-10 rule" (13) and we have
repeatedly held that there is no constitutional violation in failing to instruct jurors on the effects of
their answers. (14) Appellant's second point of error is overruled. 

 In his third point of error, appellant claims that the trial court erred in failing to sustain his
challenge to the constitutionality of the Texas death penalty scheme. In pre-trial motions, appellant
argued specifically that Article 37.071 is unconstitutional due to its failure to assign a burden of
proof on the mitigation special issue.

 Appellant claims that, despite the decision in Jurek v. Texas, (15) the Texas death penalty statute 
no longer passes constitutional muster because the sentencing scheme upheld in Jurek is not the one
in effect today. He claims that the Supreme Court did not decide in Jurek whether the special issues
properly guide the trier of fact on the question of whether the defendant would actually commit
criminal acts of violence that would constitute a continuing threat to society. Also, he claims that
Article 37.071 unconstitutionally places on the defendant the burden to produce mitigating evidence
sufficient to convince the jury that a life sentence, rather than a death sentence, should be imposed. 
Finally, appellant argues that the jury's answer to the future dangerousness special issue is no longer
subject to meaningful appellate review, and "however/whatever this Court calls its current standard
of review," the chance that a death sentence will ever again be reversed or vacated for insufficient
evidence is highly unlikely. He argues that in the fifteen years between 1976 and 1991, the Court
found the evidence to support a finding of future dangerousness insufficient ten times, but the Court
has not done so once in the years since. 

 Because appellant did not raise at trial his contention that Jurek is no longer valid, he has
failed to preserve this claim. But even if he had preserved this contention, it would fail.

 In support of his claim, appellant refers us to Martinez v. State, (16) in which we said that we
found it "inexplicable" that the Court had found evidence of future dangerousness insufficient in a
prior case where the defendant tied a woman to her bed, raped her, and stabbed her fourteen times. (17) 
The State's expert in the earlier case testified that the murder was a "typical sex murder" that was
brutal but not "extremely" brutal. (18) The Court concluded from this that the witness thought the
murder was "not shocking or otherwise extraordinary." (19) Stating that the circumstances of the
offense were not so heinous that they evinced an aberration of character so peculiarly dangerous as
alone to justify an affirmative response to the special issue, this Court considered whether there was
other evidence of future dangerousness, and ultimately found that there was not. (20)

 Although appellant couches this complaint in terms of the constitutionality of the statute, his
argument appears to be a complaint that the Court, "as it has been comprised since 1995," is less
willing to overturn a jury's finding of future dangerousness than the Court was before that date. 
Appellant complains that the Court "eschew[s] . . . any need for consideration of the defendant's
peculiar and personal circumstances," and concludes that it is very unlikely that there will ever again
be a reversal for insufficient evidence.

 Appellant misapprehends the role of an appellate court. It is the jury that decides whether
to believe that the defendant is possessed of personal circumstances that merit consideration. Our
review is in the light most favorable to the jury's determination. (21) Article 37.071 is not rendered
unconstitutional by this Court affording the proper degree of deference to the jury's decision. Moreover, the Texas death penalty scheme has not changed substantially since Jurek was
decided, and this Court has repeatedly (22) rejected claims that inconsistences in the various capital-sentencing schemes amount to the "quintessential arbitrariness" condemned by Furman v. Georgia. (23)
And to the extent that Article 37.071 has changed, it has been largely to the benefit of defendants
charged with capital murder. (24) Statutory revisions that are likely to narrow the range of persons
sentenced to death cannot defeat the constitutionality of a statute that was declared constitutional at
a time when its reach was greater than it is now.

 With regard to the claim that appellant did preserve, we have held that the absence of a
burden of proof in the mitigation issue does not violate the Eighth Amendment (25) or the Due Process
Clause of the Fourteenth Amendment. (26) Appellant has not shown that the death penalty statute is
unconstitutional as applied to him in his particular case. (27) Appellant's third point of error is
overruled. 

B. Method of Execution

 In his eighth point of error, appellant claims that the trial court erred in de facto overruling,
by failing to rule on, appellant's motion to preclude use of lethal chemicals in administering the
death penalty. 

 Appellant raised pretrial a motion to preclude use of the death penalty, specifically the use
of pancuronium bromide in the administration of lethal injection; the trial court stated that it would
defer ruling on the motion until after the jury returned its punishment verdict. When the trial court
called for objections to the punishment charge, appellant reurged the motion. The trial court did not
rule on the motion. After the punishment verdict, the trial court asked appellant if there was any
reason why the court should not proceed to sentencing, and appellant said there was no reason. The
trial court then asked if there was anything further from appellant prior to the court assessing
sentence, and appellant said there was not. Appellant therefore did not reurge the motion after the
punishment verdict. 

 As a prerequisite to presenting a complaint for appellate review, the record must show that
the trial court ruled on the request, objection or motion, either expressly or implicitly, or refused to
rule and the complaining party objected to the refusal. (28) In this case, the trial court did not expressly
or explicitly rule on appellant's motion or refuse to rule on the motion, and appellant did not object
to any alleged refusal to rule. Under Rule 33.1, appellant failed to preserve this issue for his appeal
by failing to obtain an adverse ruling from the trial court. Appellant's eighth point of error is
overruled. 

C. Expert Witness Testimony

 In his fifth point of error, appellant claims that the trial court erred in admitting psychiatric
and psychological evidence regarding future dangerousness. Specifically, appellant claims that the
trial court erred in admitting testimony of psychiatrist Dr. Richard Coons about his opinion that there
was a probability that appellant would commit acts of violence in the future, as it failed to satisfy the
requirements of Kelly v. State (29) and Daubert v. Merrill Dow Pharmaceuticals. (30) Under Kelly, the
proponent must demonstrate by clear and convincing evidence the reliability of the scientific
evidence by satisfying three criteria: (1) the underlying scientific theory is valid; (2) the technique
applying the theory is valid; and, (3) the technique was properly applied on the occasion in
question. (31) Appellant contends that the evidence failed to satisfy any of the three criteria.

 Appellant first argues that the underlying scientific theory in this case is invalid because it
is not possible for a psychiatrist to reach a conclusion whether there is a probability that someone
will commit criminal acts of violence that would constitute a threat to society. Appellant relies on
a statement (32) by the American Psychiatric Association that psychiatric predictions of long-term
future dangerousness are unreliable. (33) He states further that, according to the APA, in order to apply
this theory, the technique must involve an individual clinical interview and review all possible data. 
Appellant asserts that Dr. Coons neither conducted an interview nor reviewed all possible data.

 A trial court's ruling on the admissibility of scientific expert testimony is reviewed for an
abuse of discretion. (34) Under Rule 702, (35) it is the trial court's responsibility to determine whether
proffered scientific evidence is sufficiently reliable and relevant to assist the jury. (36) The Kelly
requirement of reliability applies with less rigor to the social sciences than to the hard sciences. (37) 
When the "soft" sciences are at issue, the trial should inquire: (1) whether the field of expertise is
a legitimate one; (2) whether the subject matter of the expert's testimony is within the scope of that
field; and (3) whether the expert's testimony properly relies on or utilizes the principles involved in
the field. (38) 

 The trial court did not abuse its discretion in allowing the testimony of Dr. Coons on the issue
of future dangerousness. (39) Dr. Coons testified outside the presence of the jury that he had reviewed
offense reports, jail records, military records, medical records, parole records, and probation records,
including the psychological evaluation that had been performed on appellant, and the evidence in
this case. He also looked at such criteria as the appellant's history of violence, his attitude toward
violence, his psychology and usual behavior, the instant offense, whether appellant has a conscience,
and the society that appellant would be in. With regard to capital murder cases, he said that he had
previously testified on future dangerousness 50 or 60 times, and had never been rejected as a witness. 
Appellant objected that "what's going to be offered is an opinion based on materials that have
already been made available to the jury to express an ultimate opinion on the issue of future
dangerousness." The claims appellant raises on appeal do not comport with his objection at trial;
thus, he has failed to preserve his complaint for review. (40) 

 Even if appellant had preserved the issue for appeal, the trial court did not err in admitting
Dr. Coons' testimony. Dr. Coons testified before the jury as to his qualifications and expertise. He
reiterated his testimony given outside the jury regarding the materials he had reviewed. He testified
that if there is enough data, it is possible to reach a conclusion about whether there is a probability
that someone will commit criminal acts of violence that would constitute a continuing threat to
society, and he reiterated the criteria he looked at with regard to appellant.

 We have held that psychological and psychiatric testimony is admissible during the
punishment phase of a capital trial. (41) Moreover, we have repeatedly recognized that testimony from
mental health experts is relevant to the issue of future dangerousness. (42) Although Dr. Coons did not
conduct an individual clinical interview, there is no such prerequisite to give his expert opinion on
future dangerousness. (43) Given the record made by Dr. Coons and the relevance of his testimony, the
trial court did not abuse its discretion in admitting his expert testimony. Appellant's fifth point of
error is overruled. 

 In his sixth point of error, appellant claims that the trial court erred in admitting the testimony
of Royce Smithey on prison conditions because he was not qualified as an expert under Daubert and
Kelly and his testimony was unreliable and irrelevant. 

 Outside the presence of the jury, appellant requested a Daubert hearing under Rule 702 (44) to
determine whether Smithey was qualified to testify about prison conditions and whether his
testimony would assist the trier of fact. (45) Appellant also asked the trial court to determine whether
Smithey had sufficient information to render an expert opinion in this particular case, as required by
Rule 705. (46) The State informed the court that Smithey was to testify about the difference between
conditions in the general prison population and in death row for purposes of proving future
dangerousness, although he was not going to testify about whether appellant would be a future
danger. Appellant argued that Smithey was not qualified to testify about the probability of violence
within the prison system, because he had not conducted or relied on accepted research. The trial
court overruled appellant's Rule 702 objection and noted that such testimony probably did not
require empirical, scientific evidence.

 Specialized knowledge that qualifies a witness to give an expert opinion may be derived from
specialized education, practical experience, a study of technical works, or a combination of these. (47) 
Smithey testified that he was the chief investigator for the Special Prosecution Unit and had been
with the unit for eighteen and a half years. He testified that his unit investigates felony offenses
occurring inside the prison system to be tried in district courts, and therefore he has observed on
numerous occasions the day-to-day functions of different prison units. Because of Smithey's
specialized knowledge and practical experience, the trial court did not abuse its discretion in
admitting his testimony under Rule 702. Appellant's sixth point of error is overruled. 

D. Double Jeopardy

 In his seventh point of error, appellant claims that the trial court erred in admitting evidence
of extraneous offenses of which appellant had been acquitted, because the admission violated the
Fifth Amendment prohibition against double jeopardy. At the punishment phase of trial, evidence
was admitted of appellant's prior attack on Henry Maciel, which caused his death. Appellant was
tried for murder, but convicted of the lesser-included offense of aggravated assault.

 The United States Supreme Court has held that double jeopardy protections are inapplicable
to sentencing proceedings because the determinations at issue do not place a defendant in jeopardy
for an "offense." (48) 

 Moreover, pursuant to Article 37.071, § 2(a)(1), a trial court has wide discretion in admitting
evidence, including extraneous offenses, relevant to the jury's determination of a capital murder
defendant's death-worthiness. (49) Extraneous offenses are admissible at the punishment phase of a
capital murder trial whether they are adjudicated or unadjudicated, and are usually offered on the
issue of future dangerousness. (50) When offering an extraneous offense at the punishment phase of
a capital trial, the State neither has to prove all of the elements of the extraneous offense (51) nor prove
beyond a reasonable doubt that the defendant committed the extraneous offense. (52) 

 The double jeopardy clause of the Fifth Amendment prohibits a second prosecution of an
individual for the same offense. (53) In this case, appellant was not retried for and convicted of the
previous murder. The evidence of the prior attack on Henry Maciel was offered and admitted at
punishment to assist the jury in resolving whether appellant posed a future danger to society, and not
to prove beyond a reasonable doubt that appellant committed the prior attack. Even when there is
a complete acquittal of an offense, evidence of the act upon which the prosecution was based is
admissible in the punishment phase of a capital murder trial. (54) Here, appellant was convicted of a
lesser-included offense. The double jeopardy clause was not violated by the trial court's admission
of the evidence of appellant's extraneous offense. Appellant's seventh point of error is overruled.

 

 KELLER, Presiding Judge

Date delivered: June 28, 2006

Do not publish
1. Tex. Penal Code Ann. § 19.03(a). 
2. Article 37.071, §§ 2(b), 2(e) and 2(g). Unless otherwise indicated all future references
to Articles refer to the Code of Criminal Procedure. 
3. Article 37.071, § 2(h). 
4. 898 S.W.2d 821, 828 (Tex. Crim. App. 1994).
5. See id.
6. See id.
7. In his brief, appellant appears to complain of the State's seeking to admit the
photograph of the purse hanging on the doorknob in the master bedroom. Appellant's brief
identifies State's Exhibit 6 as the photograph. However, according to the reporter's record,
State's Exhibit 6 is a transcript of a 911 tape. State's Exhibit 217 is the photograph of the purse
hanging on the doorknob in the master bedroom; it was admitted without objection by appellant. 
Two days later, the State offered Exhibit 9, the purse, and appellant objected on the basis that the
purse was out of police custody for a week, that it would be used to show bad acts on the part of
the appellant, that it violated the motion in limine, and that it was speculative, irrelevant, and
there was no notice of it as an extraneous bad act. Appellant has failed to preserve the error of
which he complains regarding the admission of the photograph of the purse. We nevertheless
will address the merits of his claim.
8. Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996).
9. See id.
10. "The court shall charge the jury that . . . (2) it may not answer any issue submitted
under Subsection (b) of this article 'yes' unless it agrees unanimously and it may not answer any
issue 'no' unless 10 or more jurors agree . . . ." Tex. Crim. Proc. Code Article 37.071, §
2(d)(2). 
11. "
The court shall charge the jury that in answering the issue submitted under Subsection
(e) of this article, the jury . . . (2) may not answer the issue 'no' unless it agrees unanimously and
may not answer the issue 'yes' unless 10 or more jurors agree . . . ." Tex. Crim. Proc. Code
Article 37.071, § 2(f)(2). 
12. ". . . [t]
he court, the attorney representing the state, the defendant, or the defendant's
counsel may not inform a juror or a prospective juror of the effect of a failure of a jury to agree
on issues submitted under Subsection (c) or (e)." Tex. Crim. Proc. Code Article 37.071, §
2(a)(1). Section 2(a)(1) was amended effective September 1, 2005; specifically, the words "of
this article" were deleted from the last sentence. This amendment does not effect any issue in
this case.
13. See, e.g., Johnson v. State, 68 S.W.3d 644, 656 (Tex. Crim. App. 2002); Wright v.
State, 28 S.W.3d 526, 537 (Tex. Crim. App. 2000).
14. See, e.g., Russeau v. State, 171 S.W.3d 871, 886 (Tex. Crim. App. 2005).
15. 428 U.S. 262 (1976) (holding Texas' capital-sentencing procedures did not violate the
Eighth and Fourteenth Amendments).
16. Martinez v. State, 924 S.W.2d 693, 697 (Tex. Crim. App. 1996).
17. Smith v. State, 779 S.W.2d 417, 419 (Tex. Crim. App. 1989).
18. Id. at 419.
19. Id.
20. Id. at 419-22.
21. Russeau v. State, 171 S.W.3d 871, 878 (Tex. Crim. App. 2005).
22. E.g., Threadgill v. State, 146 S.W.3d 654, 672 (Tex. Crim. App. 2004)
23. 408 U.S. 238 (1972). 
24. Since Jurek, the Texas death penalty scheme has been amended to address concerns
raised by the Supreme Court. For example, § 2(e) was added to address the issue of mitigating
evidence in Penry v. Lynaugh, 492 U.S. 302 (1989). See Cantu v. State, 939 S.W.2d 627, 639
(Tex. Crim. App. 1996).
25. Anderson v. State, 932 S.W.2d 502, 508 (Tex. Crim. App. 1996).
26. Sells v. State, 121 S.W.3d 748, 767-68 (Tex. Crim. App. 2003).
27. See Threadgill, 146 S.W.3d at 673.
28. See Tex. R. App. P. 33.1(a); see also Broxton v. State, 909 S.W.2d 912, 918 (Tex.
Crim. App. 1995).
29. 824 S.W.2d 568 (Tex. Crim. App. 1992)
.
30. 509 U.S. 579 (1993). 
31. 824 S.W.2d at 573; see also Russeau, 171 S.W.3d at 881.
32. See American Psychiatric Association: Statement on Prediction of Dangerousness
(March 18, 1983).
33. Appellant cites to the APA's amicus brief filed with the United States Supreme Court
in Barefoot v. Estelle, 463 U.S. 880 (1983) to show that it is established that such predictions are
unreliable. 
34. Russeau, 171 S.W.3d at 881.
35. Tex. R. Evid. 702.
36. See Jackson v. State, 17 S.W.3d 664, 670 (Tex. Crim. App. 2000).
37. Nenno v. State, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998).
38. See id. at 561.
39. Dr. Coons testified that, in his opinion, there is a probability that appellant will commit
criminal acts of violence that would constitute a continuing threat to society because he has a
history of violence, his psychology and usual behavior is not law abiding, he lacks a conscience,
and the instant offense is particularly heinous and he has shown no remorse for the offense;
furthermore, in the penitentiary, appellant would likely use one of his usual weapons of choice,
his fists, to commit criminal acts of violence against others. 
40. Sorto v. State, 173 S.W.3d 469, 476 (Tex. Crim. App. 2005); Tex. R. App. P. 33.1.
41. Clark v. State, 881 S.W.2d 682, 698 (Tex. Crim. App. 1994).
42. See Griffith v. State, 983 S.W.2d 282, 288 (Tex. Crim. App. 1998); see also McBride
v. State, 862 S.W.2d 600, 608 (Tex. Crim. App. 1993), cert. denied, 512 U.S. 1246.
43. See Spence v. State, 795 S.W.2d 743, 762-63 (Tex. Crim. App. 1990).
44. Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist
the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as
an expert by knowledge, skill, experience, training, or education may testify thereto in the form
of an opinion or otherwise." Tex. R. Evid. 702.
45. Smithey testified about the difference between conditions in the general population and
in death row; specifically, a person in the general population in prison on a capital murder life
sentence would have greater opportunities to commit criminal acts of violence than a person on
death row, which essentially is administrative segregation. 
46. "I
f the court determines that the underlying facts or data do not provide a sufficient
basis for the expert's opinion under Rule 702 or 703, the opinion is inadmissible." Tex. R. Evid.
702(c).
47. Wyatt v. State, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000).
48. Monge v. California, 524 U.S. 721 (1998).
49. See, e.g., Powell v. State, 898 S.W.2d 821, 830 (Tex. Crim. App. 1994).
50. See id
.
51. Spence, 795 S.W.2d at 759.
52. See Adanandus v. State, 866 S.W.2d 210, 234 (Tex. Crim. App. 1993).
53. United States v. Wilson, 420 U.S. 332, 339 (1975).
54. Powell v. State, 898 S.W.2d 821, 829-831 (Tex. Crim. App. 1994).