PD-1193-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/16/2015 10:35:24 AM
Accepted 10/16/2015 2:39:00 PM
ABEL ACOSTA
CLERK

## CAUSE NO. PD-1193-15

## IN THE COURT OF CRIMINAL APPEALS

### AUSTIN, TEXAS

**RICHARD VOLLICK**

vs.

**STATE OF TEXAS**

FILED IN
COURT OF CRIMINAL APPEALS

October 16, 2015

ABEL ACOSTA, CLERK

---

## PETITION FOR DISCRETIONARY REVIEW

---

**TO THE COURT OF CRIMINAL APPEALS OF TEXAS:**

RICHARD VOLLICK, Petitioner herein, respectfully requests this Honorable Court to grant this Petition for Discretionary review from Cause 13-1400261-CR in the Thirteenth Court of Appeals, judgment and memorandum opinion issued upon appeal from *State of Texas vs. Richard Vollick*, Cause No. 13-CR-4388-B, in the 117th Judicial District Court, Nueces County, Texas, the Honorable Sandra Watts presiding. Petitioner would respectfully show this Honorable Court as follows:

**Petitioner requests oral argument. Tex. R. App. P. 68.4(d)**

## IDENTITY OF JUDGE, PARTIES, AND COUNSEL

**Trial Judge**
Hon. Sandra Watts
117th Judicial District
Nueces County Courthouse
Corpus Christi, Texas 78404

**Petitioner**
Richard Vollick
TDCJ #01926389
Clements Unit
9601 Spur 591
Amarillo, TX 79107-9606

**Petitioner's Trial Counsel**
John Lamerson
Rausch, Sturm, Israel, Enerson, & Hornic, LLC
15660 N. Dallas Pkwy, Suite 350
Dallas, TX 75248

**Petitioner's Appellate and Petition Counsel**
John S. Gilmore, Jr.
Attorney at Law
State Bar No. 07958500
622 S. Tancahua
Corpus Christi, TX 78401
Tel: (361) 882-4378

Christopher A. Dorsey
Attorney at Law
State Bar No. 24036493
606 N. Carancahua, Suite 1001
Corpus Christi, TX 78401
(361) 882-9991

**Respondent's Trial Counsel**
Ms. Deborah Kay "Deb" Rudder
SBOT No. 00797355
Ms. Crystal Mathis
SBOT No. 24078942
Assistant District Attorneys
Nueces County District Attorney's Office
Nueces County Courthouse
901 Leopard
Corpus Christi, TX 78401
(361) 888-0410

**Respondent's Appellant Counsel**
Mark Skurka
Ms. Deborah Kay "Deb" Rudder
SBOT No. 00797355
Nueces County District Attorney 105th Judicial District
901 Leopard, Room 206
Corpus Christi, Texas 78401

**Respondent's Counsel**
Lisa McMinn
State Prosecuting Attorney
P.O. Box 13046
209 W.14th St.
Austin, TX 78711

# TABLE OF CONTENTS

Identity of Judge, Parties, Parties and Counsel ......... 2-3

Table of Contents .................................. 4

Index of Authorities.............................. 5

Statement Regarding Oral Argument ................. 6

Statement of the Case............................. 7

Statement of Procedural History.................. 7

Grounds for Review .............................. 8

Argument ........................................ 8

A.   Brief Summary of Facts with Record Citations .... 8

B.   The Case Law Requiring Harm is Based on Rule 3.08. . . 10

C.   The District Attorney Violated Rule 3.07 . . . . . . . . . . . 13

D.   The Thirteenth Court of Appeals' Suggested
     Process May Be Flawed . . . . . . . .  . . . . . . . . . . . . 15

Prayer ......................................... 18

Certificate of Service ......................... 19

Certificate of Compliance ...................... 20

Appendix........................................ 20

# INDEX OF AUTHORITIES

*House v. State*, 947 S.W. 251, 252 (Tex. Crim. 1997) . . . . . . . . ..     11, 12

*Ocon v. State*, 284 S.W.3d 880, 886 (Tex. Crim. App. 2009). . .     16

*Powers v. State*, 165 S.W.3d 357, 359 (Tex. Crime. App. 2005) . .     11, 12

*Smith v. Phillips*, 455 US 209, 215 (1982) . . . . . . . . . . . . . . . .     16

TEX. DISCIPLINARY R. PROF'L CONDUCT 3.07. . . . . . . . . . . .     13

TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08 . . . . . . . . . . ..     12

TEXAS RULE OF EVIDENCE 404(b) . . . . . . . . . . . .. . . . . . . . . . .     14

## STATEMENT REGARDING ORAL ARGUMENT

The effect of unethical prosecution on a criminal trial is an important statewide issue that would benefit from oral argument. There are many recent changes to laws based on unethical prosecution, such as the Michael Morton Act, because lawmakers and courts are more aware than ever of the significant impact that unethical prosecutors have on a criminal case.

Here, the District Attorney for the 105th Judicial District provided criminal background information and gave an interview to a major local television station news reporter the day before the jury deliberated on Petitioner's guilt. The news discussed Petitioner's specific criminal history (numerous DWI's), and the District Attorney was quoted about the need to send "these" repeat DWI offenders to prison. The trial court refused Petitioner's request to poll the jury, presumed that jurors followed its instruction from the beginning of the trial (even though a couple were employed with local media outlets), and jurors would not speak to attorneys post-verdict before the motion for new trial. Accordingly, there was no showing here of any actual harm at this stage, as required by the intermediate court.

6

Petitioner is requesting briefing on the merits and oral argument to address the issue of whether harm should be required or presumed under these facts or whether Petitioner should have been allowed opportunity to show harm through the questioning of the jurors.

## STATEMENT OF THE CASE

Mr. Vollick was found guilty and sentenced to seventy years for driving while intoxicated (no injuries) enhanced from a Class B misdemeanor after a jury trial in the 117th Judicial District Court, Nueces County, Texas, the Honorable Sandra Watts presiding.

This Petition challenges the process Petitioner and trial courts should follow when the District Attorney violates ethical prohibitions on speaking to the media about his criminal record the night before the jury deliberates on guilt.

## STATEMENT OF PROCEDURAL HISTORY

The Thirteenth Court of Appeals affirmed the judgment with opinion (attached in Appendix) on July 23, 2015. The motion for rehearing was filed on August 12, 2015, and the Thirteenth Court of Appeals denied it on August 17, 2015.

## GROUNDS FOR REVIEW

*1. Whether harm should be required to be shown or presumed when a prosecutor uses the local television news media to discuss a defendant's specific criminal history the evening before the jury deliberates on guilty.*

*2. Whether Petitioner's constitutional right to a fair trial is violated when the District Attorney uses the local television news media to discuss a defendant's specific criminal history the evening before the jury deliberates on guilt.*

*3. Whether a trial judge should poll the jury to determine whether they heard any news reports regarding the case when a prosecutor uses the local television news media to discuss a defendant's specific criminal history while the case is being tried.*

## ARGUMENT

### A.    Brief Summary of Facts with Record Citations

The night before the jury deliberated on Petitioner's guilt, the local ABC news affiliate and most watched news in the Coastal Bend area aired a story about Petitioner's trial.   See Defendant's Exhibit 1, video of the KIII-

TV April 28, 2014 news report showing interview with District Attorney. See also RRv5 5-7, Defendant's introduction of the video and motion for mistrial on morning of April 29, 2014.

The broadcast that aired revealed that Petitioner had "been in court on DWI charges at least seven times." See Exh. 1, from RRv8. They also revealed that he had been up to prison twice for DWI and faced up to life in prison as a "labeled" habitual felony offender. They further explained that "Vollick's case, however, is one of many similar cases of drivers who have been in and out of prison, or have been on probation multiple times, only to re-offend again."

After showing Petitioner and his attorney with the bailiff escorting Petitioner,[1] broadcasting his name and previous record, the news broadcast then showed portions of its interview with Mark Skurka, the Nueces County District Attorney, discussing Mr. Vollick's case in context of other habitual felony DWI defendants. See Defense Exhibit 1, video of news broadcast.

The District Attorney explained that time eventually runs out on "these" habitual felony offenders and prison is all that is left. The District

---

[1] Usually trial courts go to great lengths at the guilt stage of the proceedings to avoid letting the jury know that the Defendant is in custody.

Attorney explained that for those like Mr. Vollick prison time is all that's left mostly because of their criminal record. He also discussed that other similarly situated defendants did an open plea and received 32 years and 35 years. He explained, after all, "it's not their first time at the rodeo." Id.

Mr. Vollick's trial attorney asked the trial court to poll jurors to ask if any saw the broadcast. Id. 40:13-20. He also reminded the trial court that there were two members of the media on the jury, and that further made it necessary to poll them. Id. 40:13-20. The trial court denied his request because "what I saw on video is not the basis for a mistrial." Id.

In sum, the news broadcast, with the help of the District Attorney, discussed Mr. Vollick's seven prior DWI convictions and his habitual felony offender status. See DX-1 video.

## B.    The Case Law Requiring Harm is Based on Rule 3.08

The Thirteenth Court of Appeals rejected Petitioner's argument that the District Attorney's statements to the media were prosecutorial misconduct and violated Petitioner's fundamental right to a fair trial.[2] See

---

[2] See U.S. CONST. amend. VI (granting the right to an impartial jury trial in criminal prosecutions); id. amend. VII (preserving "the right of trial by jury" in civil cases). See TEX. CONST. art. I, § 10 (promulgating that an accused in criminal prosecutions has the right to a speedy public trial before an impartial jury); id. art. I, § 15 ("The right of trial by jury shall remain inviolate."); id. art. V, § 10 (reserving the right of a plaintiff or defendant to a trial by jury in all district court trials).

Opinion 5-8 (a true and correct copy is attached in the Appendix as Exhibit 1). It disapproved of Petitioner's use of rules of professional conduct as "tactical weapons" and required a showing of actual prejudice. Id. It stated:

> The Texas Court of Criminal Appeals has held that the rules of professional conduct "should not be used as a tactical weapon to . . . obtain a reversal of a conviction for alleged disciplinary rule violations by opposing counsel" unless "the defendant can show the alleged disciplinary rule violations by opposing counsel deprived him of a fair trial or otherwise affected his substantial rights." *House v. State*, 947 S.W.2d 251, 253 (Tex. Crim. App. 1997); see *Powers v. State*, 165 S.W.3d 357, 359 (Tex. Crim. App. 2005). "[I]f a defendant cannot show actual prejudice from an alleged disciplinary rule violation by the State, then he will not be entitled to relief on appeal." *House*, 947 S.W.2d at 253.

*Id.* at 7. The intermediate court cited two cases from this Honorable Court that require a showing of actual prejudice to entitle Petitioner to relief.

Nevertheless, the cases cited by the Thirteenth Court of Appeals are not factually analogous, as they involve two completely different rules. In *House* the Petitioner relied "on an alleged disciplinary rule violation by the State as the sole basis for reversal of his conviction." *House v. State*, 947 S.W. 251, 252 (Tex. Crim. 1997). House

11

complained that the trial court permitted two assistant district attorneys to testify about House's character during the punishment phase of the trial, in apparent violation of Texas Disciplinary Rule 3.08. *Id.* The main focus of Rule 3.08 is a recognition of the potential harm to the offending lawyer's client when the lawyer assumes the dual role of advocate-witness. When, as was the case in *House*, the opposing party complains, the disciplinary rule "spoke" in terms of actual prejudice and potential harm to the opposing party. In summary, *House* involved a completely different rule of professional conduct that refers to the actual prejudice and harm to the opposing party when it was violated.

*Powers* involved the application of the same disciplinary rule as in House, Rule 3.08 of the Texas Disciplinary Rule of Professional Conduct, and a very similar complaint of a lawyer assuming a dual role. *Powers v. State*, 165 S.W.3d 357, 359 (Tex. Crime. App. 2005). Powers complained that the one of the arresting officers became an attorney in the prosecutor's office after his arrest and assumed dual roles as witness and prosecutor. This Honorable Court held that the former officer did not serve dual roles and did not reach the harm

question. This had nothing to do with a District Attorney speaking to the media about a defendant's criminal background during trial.

## C. The District Attorney Violated Rule 3.07

The Texas Disciplinary Rules of Professional Conduct State prohibit the State from talking about Petitioner's criminal record in the media. See TEX. DISCIPLINARY R. PROF'L CONDUCT 3.07. In fact, publicly speaking about a defendant's criminal record is clearly prohibited, as it is one of the first items in the list of items specifically prohibited. The Rule sets forth:

> (a) In the course of representing a client, a lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicatory proceeding. A lawyer shall not counsel or assist another person to make such a statement.

> (b) **A lawyer ordinarily will violate paragraph (a), and the likelihood of a violation increases if the adjudication is ongoing or imminent**, by making an extrajudicial statement of the type referred to in that paragraph **when the statement refers to**:

> (1) the character, credibility, reputation or **criminal record** of a party, suspect in a criminal investigation or witness; or the expected testimony of a party or witness; . . .

13

*Id.* (emphasis added). This rule sets forth that when a prosecutor speaks to the media about the criminal record of a defendant it is ordinarily a violation.

The timing of the District Attorney's decision to make extrajudicial statements to the media about Petitioner's criminal history and habitual felony offender status increases the likelihood of the violation. As the Rule sets forth, "the likelihood of a violation increases if the adjudication is ongoing or imminent." *Id.* Here the statements were published the night before the jury deliberated on guilt. Here, the trial was ongoing, thus the likelihood of violation increased, as the extrajudicial statements in the media are more likely to materially prejudice the proceeding.

This is an especially egregious violation because it was an effective way to potentially inform the jury of a criminal record that normally would not be allowed to be presented to the jury because it is so prejudicial. See generally Texas Rule of Evidence 404(b) (limiting evidence of other crimes).[3] The District Attorney's statements to the media regarding Petitioner's criminal record effectively nullify the exclusionary rules of

---

[3] It is well recognized that, despite the logical relevancy of such character evidence to prove conforming conduct, such proof tends to inject into a trial "a dangerous baggage of prejudice." McCORMICK'S HANDBOOK OF THE LAW OF EVIDENCE Section 188, at 445 (Edward W. Cleary et al. eds., 2d ed. 1972).

evidence to keep his criminal record from the jury during this stage of the proceeding. It is well recognized, even by the trial court in this trial, of the need to protect defendant's right to a fair trial by excluding evidence of his prior felonies and his habitual felony offender status from the panel and the jury during the guilt portion of the trial.

The assistant District Attorney showed her eagerness to get Petitioner's criminal history to the jury at this stage. See RR2 at 18. She wanted Petitioner to stipulate to their admission at this stage, without any reason showing the need to introduce this to a jury at guilt. Id. The implication is that by showing her eagerness at the voir dire stage of trial to get the conviction in front of the jury, the District Attorney willfully violated the rules of professional conduct to circumvent traditional rules of evidence.

Here, when they could not tell the jury about Petitioner's priors at the guilt stage through proper evidentiary means, they used the media to manipulate the process.

### D. The Thirteenth Court of Appeals' Suggested Process is Flawed

The Thirteenth Court of Appeals would require a showing of actual harm, such as a showing that jurors actually heard the news story.

However, on the other hand, the same court upheld the trial court's refusal to allow questioning of the jurors. In other words, Petitioner must show harm, but when he attempts to do so through the trial court, the Thirteenth Court of Appeals supports the trial court's decision to not allow him to do so by polling the jury.

As required in *Ocon v. State*, Petitioner's trial attorney asked the trial court to poll jurors to ask if any saw the broadcast. RRv5 40:13-20. *Ocon v. State*, 284 S.W.3d 880, 886 (Tex. Crim. App. 2009). He also reminded the trial court that there were two members of the media on the jury, and that further made it necessary to poll them. Id. 40:13-20. The trial court denied his request. *Id.*

The United States Supreme Court has long held that the remedy for allegations of juror partiality is a hearing where the defendant has the opportunity to prove actual bias. *Smith v. Phillips*, 455 US 209, 215 (1982). The United States Supreme Court reasoned that due process means, among other thing, a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. *Id.* at 217. Here, Appellant's due process rights were violated by

the trial court's failure to conduct an inquiry to determine the effects of the improper statements to the media by the District Attorney.

The Thirteenth Court of Appeals reasoned that any questions to the jury by the trial court would alert them to the existence and content of the report. Opinion at 9. This is simply not accurate, as a trial court can reasonably question jurors individually and outside the presence of other jurors as to whether they watched the news that night. The inquiry could continue to see if the juror heard about any news stories about this case. A felony trial court in the State of Texas, as an experienced lawyer, generally knows how to ask open-ended questions that would not reveal the contents of the news story yet get to the heart of the actual harm issue. If the juror responded negatively, the trial court can simply re-admonish the juror to not read or watch the news until after the trial. On the other hand, this simple process would get to the truth as to whether the District Attorney's unethical actions prejudiced or harmed Petitioner.

Petitioner recognizes here that the actual bias here is unknown, as the trial judge refused his request to poll jurors as to whether they saw or heard about the news story. After trial, jurors refused to speak to his

attorney regarding any news stories that may have been heard, as they were warned that defense attorneys would try to "mess with" the verdict. Nevertheless, had the trial court questioned jurors properly without revealing the content of the news story, the true harm would have been revealed and an alternate used, if necessary, for the remainder of the trial.

## PRAYER FOR RELIEF

Petitioner, Richard Vollick, respectfully requests that this Honorable Court grant this Petition for Discretionary Review, order briefing on the merits, and reverse the judgments of the courts below, alternatively ordering the entry of a judgment of acquittal, ordering the dismissal of the case, or remanding for further proceedings.

Respectfully submitted,

John S. Gilmore, Jr.
Attorney at Law
State Bar No. 07958500
622 S. Tancahua
Corpus Christi, TX 78401
Tel: (361) 882-4378

Christopher A. Dorsey
State Bar No. 24036493
606 N. Carancahua St., Ste 1001
Corpus Christi, TX 78476
Tel: (361) 8829991
Fax: (866) 9261982

By: /s/ John Gilmore

JOHN S. GILMORE, JR.
Attorneys for Richard Vollick

## CERTIFICATE OF SERVICE

This is to certify that on October 16, 2015 a true and correct copy of the above and foregoing document was served on the District Attorney's Office, Nueces County, 901 LEOPARD STREET, CORPUS CHRISTI, TEXAS 78401, via e-filing.

/s/ Christopher Dorsey
CHRISTOPHER A. DORSEY

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4, I certify this Petition for Discretionary Review contains 3,440 total words. This is a computer-generated document created in Pages, using 14-point typeface for all text, except footnotes which are in 12-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software "Pages" used to prepare the document.

_/s/ Christopher Dorsey_
CHRISTOPHER A. DORSEY

## APPENDIX (Including Copy of Opinion of the court of appeals)



NUMBER 13-14-00261-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI – EDINBURG

RICHARD H. VOLLICK,                                                                 Appellant,

v.

THE STATE OF TEXAS,                                                                 Appellee.

On appeal from the 117th District Court
of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Garza and Longoria
### Memorandum Opinion by Justice Garza

A jury convicted appellant, Richard H. Vollick, of his third driving while intoxicated ("DWI") offense, a third-degree felony. *See* TEX. PENAL CODE ANN. §§ 49.04, 49.09(b)(2) (West, Westlaw through Ch. 46, 2015 R.S.). The jury found that Vollick had been previously convicted of two additional felonies and assessed punishment at seventy years' imprisonment. *See id.* § 12.42(d) (West, Westlaw through Ch. 46, 2015 R.S.). By

four issues on appeal, Vollick contends that the trial court abused its discretion by (1) denying his request for mistrial based on a television news report, (2) not allowing his trial counsel to poll the jury under Texas Rule of Evidence 606(b), (3) not allowing his trial counsel to question the venire panel on a twenty-five-year minimum sentence, and (4) denying his motion for new trial based on allegedly false testimony. We affirm.

## I. BACKGROUND

On January 16, 2014, Vollick was charged by way of indictment with felony DWI. The indictment alleged that Vollick was convicted of DWI in May 2001 and again in December 2011. The indictment also alleged that Vollick was previously convicted of two other felonies, the first for burglary in December 1988 and the second for felony DWI in April 2012.

Port Aransas police officers arrested Vollick on December 26, 2013 for DWI after he ran over two signs exiting the Port Aransas ferry in Aransas Pass. Two eyewitnesses testified that they saw Vollick strike one sign and then travel along the median until he hit another sign. One of the eyewitnesses, a ferry deck hand, testified that Vollick's facial expression and eyes were droopy, his speech was slurred, and his movements were sluggish. In her opinion, based on these observations, Vollick was under the influence of alcohol. Another eyewitness testified that Vollick was smoking a cigarette in the middle of a gasoline spill and even attempted to throw the cigarette on the ground, and that, based on this behavior, he believed Vollick was under the influence of alcohol.

During a pre-trial hearing, Vollick stipulated that the two prior DWI convictions and the two prior felony convictions were true. Defense counsel requested that the venire panel be advised that the minimum punishment was twenty-five years without instructing

2

them on Vollick's habitual felony offender status. *See id.* However, the trial court denied the request and instead instructed the panel that the charged offense is a third-degree felony which carries a range of punishment of two to ten years' confinement. *See id.* § 12.34(a) (West, Westlaw through Ch. 46, 2015 R.S.). The court also instructed the jury that if it found one prior felony conviction, then the range of punishment is two to twenty years, and if it found two prior felony convictions, then the range of punishment is twenty-five years to life. *See id.* § 12.42.

Joseph Rivas, a Port Aransas police officer, testified that he found a twelve-ounce beer bottle in the back of Vollick's car that was cold and still contained some liquid. According to Rivas, he then asked Vollick if he had consumed any alcohol and Vollick admitted to drinking four or five twelve-ounce beers. Rivas testified that Vollick's eyes were bloodshot, his speech was slurred, he exhibited a disorganized thought process, and he had trouble retrieving his driver's license. Vollick was swaying, failed to follow directions, and failed to complete the walk-and-turn field sobriety test successfully. Rivas, as well as another officer present at the scene, each testified that they believed Vollick was intoxicated based on his movements, his appearance, his speech, and the way he smelled.

Rivas also testified that he had specialized training in intoxication detection and in standard field sobriety tests, including a certification in the horizontal gaze nystagmus ("HGN") test. According to the officer, Vollick exhibited all of the indicators of alcohol consumption or some other central nervous system depressant. Rivas also testified that Vollick's driver's license did not list any restrictions, and that Vollick was not wearing glasses or contact lenses at the time of the accident. During opening statements, defense

3

counsel mentioned that Vollick suffered from many medical issues, including glaucoma, and indicated that these conditions were relevant to his inability to pass the field sobriety test. However, during cross-examination, Rivas testified that appellant never mentioned that he suffered from glaucoma. Rivas further testified that neither his training manual nor the National Highway Traffic Safety Administration manual listed glaucoma as one of the conditions that could potentially cause HGN. The other officer on the scene, Brett Boyer, testified that he was certified in standardized field sobriety testing, and that he was also not aware that glaucoma could affect the HGN test.

The night before the final day of trial, a local television station, KIII, ran a story on Vollick's case in which the reporter referred to the fact that Vollick had previously "been in court on DWI charges at least seven times." The news broadcast also showed portions of an interview with the Nueces County District Attorney, during which the District Attorney discussed other habitual-offender felony DWI defendants. The morning following the broadcast, defense counsel introduced the video and requested a mistrial for prosecutorial misconduct. The trial court tabled the issue to revisit later in the trial, stating that the "only reason that would be important is if indeed the jury heard those comments, and I've instructed the jury not to listen to those comments . . . . It doesn't impact my case, unless those jurors have been impacted." Later, after both parties rested, the trial court reviewed a recording of the news report. At this point, defense counsel noted that the jury pool contained a KIII employee and an editor of the Corpus Christi *Caller Times*, and he requested permission to ask these two jurors if they had seen the news report. Counsel later requested permission to "ask the jurors if they have seen the footage." The trial denied the request and the motion for mistrial.

4

During closing argument, defense counsel focused on the fact that Vollick was not wearing glasses at the time of the accident, and that he had mental and physical problems that might have interfered with the field sobriety tests. The State noted that the defense did not call any experts to the stand to connect Vollick's mental and physical issues to his intoxication. The jury convicted Vollick of felony DWI and sentenced him to seventy years' imprisonment in Texas Department of Criminal Justice.

Vollick then filed a motion for new trial and arrest of judgment, complaining that the State had misled the jury about the non-alcohol-related causes of HGN and had led the jury to believe that Vollick did not have any problems with his vision. At a hearing on the motion for new trial, Vollick did not call any witnesses to explain his eye conditions or the side effects of his medication. The motion for new trial also alleged a violation of Vollick's right to a fair trial in light of the KIII news report; however, no witnesses were called regarding this issue at the new trial hearing. At that hearing, Vollick called only his trial counsel to the stand to testify that he was unable to find anyone to testify at trial whether glaucoma affected the HGN test. The trial court denied the motion for new trial, and this appeal followed.

## II. DISCUSSION

### A. Motion for Mistrial

By his first issue, Vollick contends that the trial court abused its discretion by denying his motion for mistrial based on the KIII television news report. In his argument regarding this issue, Vollick emphasizes that the District Attorney violated the Texas Disciplinary Rules of Professional Conduct by giving a statement to the media regarding

5

Vollick's case during trial.[1] He argues that the District Attorney's comments regarding his criminal record violated his Sixth Amendment right to a fair trial and amounted to prosecutorial misconduct, warranting a mistrial. The State counters by noting that the District Attorney did not explicitly refer to Vollick by name in the news report, and it argues that Vollick did not show that he suffered any harm as a result of the report.

A mistrial is an appropriate remedy only in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). A mistrial halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Id.* Whether an error requires a mistrial must be determined by the particular facts of the case. *Id.* A trial court's denial of a mistrial is reviewed for an abuse of discretion. *Id.* We view the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling. *Id.* The ruling must be upheld if it was within the zone of reasonable disagreement. *Id.*

Even assuming, but not deciding, that the District Attorney's comments constituted a violation of ethical rules, we find no abuse of discretion by the trial court in denying

---

[1] In particular, rule 3.07 of the Texas Disciplinary Rules of Professional Conduct states as follows:

(a) In the course of representing a client, a lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicatory proceeding. A lawyer shall not counsel or assist another person to make such a statement.

(b) A lawyer ordinarily will violate paragraph (a), and the likelihood of a violation increases if the adjudication is ongoing or imminent, by making an extrajudicial statement of the type referred to in that paragraph when the statement refers to:

(1) the character, credibility, reputation or criminal record of a party . . . .

TEX. DISCIPLINARY R. PROF'L CONDUCT 3.07, *reprinted in* TEX. GOV'T CODE ANN. tit. 2, subtit. G, app. A (West, Westlaw through Ch. 46, 2015 R.S.).

6

Vollick's motion for mistrial. The Texas Court of Criminal Appeals has held that the rules of professional conduct "should not be used as a tactical weapon to . . . obtain a reversal of a conviction for alleged disciplinary rule violations by opposing counsel" unless "the defendant can show the alleged disciplinary rule violations by opposing counsel deprived him of a fair trial or otherwise affected his substantial rights." *House v. State*, 947 S.W.2d 251, 253 (Tex. Crim. App. 1997); *see Powers v. State*, 165 S.W.3d 357, 359 (Tex. Crim. App. 2005). "[I]f a defendant cannot show actual prejudice from an alleged disciplinary rule violation by the State, then he will not be entitled to relief on appeal." *House*, 947 S.W.2d at 253.

> Here, prior to trial, the trial court instructed the jury as follows:

> The media is an outside influence and we are trying to shelter you, isolate you from all those influences so that you can render your verdict based upon what happens in this courtroom. So, please do not read anything in the print media, Caller.com, or actually the newspaper. And please do not stay in the same room if a radio and/or the T.V. is discussing this case; use the remote, close it, etc. Remember, you will very rarely see a member of the media in the courtroom listening to the facts as you are hearing them. No one has heard these facts. So the bottom line is everything they are stating is all hearsay, based upon, you know, whatever they are drawing upon. But the key thing is, is your verdict has to be based here and not be influenced by the media, so that is the media instruction.

And, the guilt-innocence jury charge contained the following instruction:

> With respect to the evidence admitted in this case concerning the defendant's having been previously convicted two times of being intoxicated while operating a motor vehicle in a public place, you are instructed that such evidence cannot be considered by you in any manner as proving or tending to prove that the defendant was intoxicated while driving or operating a motor vehicle in a public place on or about DECEMBER 26, 2013.

The guilt-innocence charge also advised the jury that Vollick "has stipulated to having been previously convicted two or more times of an offense relating to the operating of a motor vehicle while intoxicated."

7

"We generally presume the jury follows the trial court's instructions in the manner presented." *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). Here, there is no evidence in the record establishing that any juror disobeyed the trial court's explicit instructions regarding media coverage or its limiting instruction regarding the two stipulated prior DWI offenses.[2] Therefore, we cannot say that Vollick suffered any "actual prejudice" as a result of the District Attorney's comments in the KIII news report, *see House*, 947 S.W.2d at 253, nor can we say that the trial court abused its discretion in denying a mistrial. Vollick's first issue is overruled.

## B.  Rule 606(b) Questions

By his second issue, Vollick contends that the trial court erred in disallowing his trial counsel from asking jurors as to whether they had seen the televised news report.

Under Texas Rule of Evidence 606, a juror may not testify as a witness before the other jurors at trial. TEX. R. EVID. 606(a). During an inquiry as to the validity of a verdict or indictment, however, a juror may testify "about whether an outside influence was improperly brought to bear on any juror." TEX. R. EVID. 606(b)(2)(A). In *Mays v. State*, the Texas Court of Criminal Appeals applied an abuse-of-discretion standard in reviewing the trial court's denial of defense counsel's request to poll the jury as to "whether they had been exposed to or affected by media coverage of the case." 318 S.W.3d 368, 377 (Tex. Crim. App. 2010). That case involved an editorial article that had appeared in a local newspaper the day before trial allegedly suggesting "that law enforcement was watching what happened in this trial." *Id.* The Court held that the trial court did not abuse

---

[2] We note that Vollick did not call any witnesses to testify regarding this issue at the motion for new trial hearing.

8

its discretion in refusing counsel's request, noting that "[t]he trial court repeatedly instructed the jury panel, the individual jurors selected, and the empaneled jury not to read, watch, or listen to any media stories about the case." *Id.* at 378. The Court further noted that, had the trial court granted counsel's request, it would have risked exposing the jury to the existence and contents of the editorial for the first time. *Id.* at 377–78. The Court reached an identical conclusion in *Powell v. State*, which involved a newspaper article that allegedly inaccurately recounted testimony from a hearing on the admissibility of DNA evidence. 898 S.W.2d 821, 828 (Tex. Crim. App. 1994). There, the Court held:

> In the instant case, the trial court was faced with a decision: it could either deny appellant's request for a jury poll concerning the contents of the . . . article, or it could grant appellant's request, poll the jury, and risk exposing the jury to the existence of the article and its contents for the first time. We believe the trial court decided correctly. By refusing to poll the jury about the . . . article, and by reiterating its admonishments, the trial court did its best, under the circumstances, to preserve the integrity of the jury panel.

*Id.*

We believe that *Mays* and *Powell* are analogous to the instant case. As in those cases, the trial court here advised the jurors that they were not to listen to or watch media reports about the case. By refusing to poll the jury about the KIII news report, the trial court avoided the risk of exposing the jury to the existence and content of the report for the first time, thereby helping to "preserve the integrity" of the panel. *See id.* Following *Mays* and *Powell*, we conclude that the trial court did not abuse its discretion in denying defense counsel's request to poll the jury, and we overrule Vollick's second issue.

## C. Voir Dire Questions Regarding Punishment Range

By his third issue, Vollick contends that the trial court abused its discretion by refusing to allow his counsel to question the venire panel regarding the minimum

9

punishment applicable to his offense. Vollick contends that, due to his stipulations regarding his prior offenses, the minimum punishment applicable in his case was set by the habitual-felony-offender statute at twenty-five years' imprisonment, rather than two years as provided by statute generally for a third-degree felony. *See* TEX. PENAL CODE ANN. §§ 12.34(a), 12.42(d).

> Both the State and defense are entitled to jurors who can consider the entire range of punishment for the particular statutory offense—i.e., from the maximum to the minimum and all points in between. Jurors must be able to consider both a situation in which the minimum penalty would be appropriate and . . . a situation in which the maximum penalty would be appropriate. Therefore, both sides may question the panel on the range of punishment and may commit jurors to consider the entire range of punishment for the statutory offense. A question committing a juror to consider the minimum punishment is both proper and permissible.

*Cardenas v. State*, 325 S.W.3d 179, 184 (Tex. Crim. App. 2010) (footnotes and internal quotations omitted).

We find no error in the record related to Vollick's third issue. The trial court denied defense counsel's request to instruct the jury that the minimum punishment upon conviction was twenty-five years, but Vollick directs us to no point in the record where the trial court disallowed him from asking the individual veniremembers whether they would be willing to consider twenty-five years as an appropriate punishment in the case. In fact, the prosecutor questioned the panel as to whether they believed twenty-five years was too harsh a punishment for the offense at issue. Finally, as the State notes, Vollick could have withdrawn his stipulation prior to sentencing and the trial court could have conceivably set aside the stipulation. *See Brito v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005) ("A trial court has discretion to set aside a stipulation."). Therefore, it would have been improper for the trial court to have instructed the venire panel that, because

10

Vollick stipulated to his prior offenses, the minimum punishment would be the prison term set in the habitual-felony-offender statute. We overrule Vollick's third issue.

## D.    Motion for New Trial

Vollick argues by his fourth issue that the trial court abused its discretion by denying his motion for new trial. He contends that he was entitled to a new trial because "the State argued and allowed, without correction, [m]isleading evidence [r]egarding [Vollick's] [v]ision, the [c]auses of HGN, and [h]is [m]edical [c]ondition." We review a denial of a motion for new trial for abuse of discretion. *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014).

"The Due Process Cause of the Fourteenth Amendment can be violated when the State uses false testimony to obtain a conviction, regardless of whether it does so knowingly or unknowingly." *Ex parte Chavez*, 371 S.W.3d 200, 207–08 (Tex. Crim. App. 2012) (citing *Ex parte Robbins*, 360 S.W.3d 446, 459 (Tex. Crim. App. 2011)); *see* U.S. CONST. amend. XIV. Testimony need not be perjured to constitute a due process violation; rather, "it is sufficient that the testimony was 'false.'" *Id.* "The question is whether the testimony, taken as a whole, gives the jury a false impression." *Id.*

Vollick argues that the State provided "misleading evidence regarding his vision, knowing he truly had vision issues." He first notes that, even though there were medical records in evidence establishing that he had been prescribed medication for glaucoma, the State nevertheless elicited testimony from Rivas that Vollick's driver's license had no listed restrictions such as required eyeglasses. Second, Vollick argues that the State elicited testimony from Rivas and Boyer that glaucoma does not affect the HGN test, and he asks us to take judicial notice that glaucoma may, in fact, bring about HGN. *See*

11

*Schultz v. State*, 664 A.2d 60, 77 (Md. Ct. Spec. App. 1995) (listing glaucoma among 38 "possible cause[s] of nystagmus"); *State v. Witte*, 836 P.2d 1110, 1120 (Kan. 1992) (noting that "conditions such as . . . glaucoma . . . may result in gaze nystagmus").

First, with respect to the driver's license restrictions, Rivas never gave any false or misleading testimony. It is undisputed that Vollick's driver's license contains, as Rivas stated, no restrictions. Vollick argues that this testimony was "misleading" in light of medical records that showed he was diagnosed with glaucoma, but we disagree. At most, this was a conflict in the evidence which the jury, as finder of fact, was entitled to resolve. *See, e.g., Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

Second, with respect to the testimony regarding the effect of glaucoma on the HGN test, the State points out that, even if we were to take judicial notice that glaucoma may cause nystagmus, that does not mean that glaucoma would necessarily cause a person to fail the HGN test. The State directs us to *People v. McKown*, in which the Illinois Supreme Court observed:

> Nystagmus is "an involuntary, rapid, rhythmic movement of the eyeball, which may be horizontal, vertical, rotatory, or mixed, i.e., of two varieties." The medical dictionary lists 45 types of nystagmus. For example, ataxic nystagmus is unilateral and occurs in individuals with multiple sclerosis. Congenital nystagmus "may be caused by or associated with optic atrophy, coloboma, albinism, bilateral macular lesions, congenital cataract, severe astigmatism, and glaucoma." Gaze nystagmus, which is at issue in the present case, is "made apparent by looking to the right or to the left," as opposed to fixation nystagmus, "which appears only on gazing fixedly at an object," or latent nystagmus, "which occurs only when one eye is covered."

924 N.E.2d 941, 945 (Ill. 2010) (citations to medical dictionaries omitted); *see* IDA G. DOX, ET AL., ATTORNEY'S ILLUSTRATED MEDICAL DICTIONARY N48 (West 1997) (defining "nystagmus" as "[i]nvoluntary movements of the eyeballs in either a rotary, horizontal, or vertical direction; most commonly it is a rhythmic jerking with a fast and slow component,

12

and is described by the direction of the quick component"). There are multiple forms of nystagmus, and while there may be some support for the proposition that glaucoma may bring about nystagmus, we are aware of no authority indicating that glaucoma may cause the particular type of nystagmus that is a sign of intoxication in the HGN test.[3] Accordingly, we do not believe that the officers' testimony, in which they stated that they were not aware that glaucoma could cause HGN, gave the jury a "false impression" so as to violate Vollick's right to due process under the Fourteenth Amendment. *See Ex parte Chavez*, 371 S.W.3d at 208.

Even if we were to determine that the officers' testimony regarding the potential of glaucoma to cause HGN gave a false impression to the jury, Vollick has not demonstrated that he suffered harm from the admission of the testimony. To constitute a due-process violation, the record must show that the allegedly false testimony was material—that is, the record must show "'a reasonable likelihood' that the false testimony affected the judgment of the jury." *Id.* (citing *Ex parte Ghahremani*, 332 S.W.3d at 470, 478 (Tex. Crim. App. 2011)). Here, the record contains overwhelming evidence that Vollick operated a vehicle while intoxicated on December 26, 2013. Eyewitness testimony established that Vollick hit two signs with his vehicle that night, that his facial expression and eyes were "droopy," that his speech was slurred, and that he was smoking a cigarette in the presence of spilled gasoline. Rivas testified that there was an open beer bottle in

---

[3] Vollick cites *Mata v. State*, in which a dissenting justice of the San Antonio Court of Appeals noted that "[t]here is evidence that . . . glaucoma may bring about HGN." 13 S.W.3d 1, 15 (Tex. App.—San Antonio 1999) (Cadena, Retired C.J., dissenting), *rev'd on other grounds*, 46 S.W.3d 902, 917 (Tex. Crim. App. 2001). The only authority cited in *Mata* for this proposition, however, is *Emerson v. State*, in which the Texas Court of Criminal Appeals took judicial notice "of the reliability of both the theory underlying the HGN test and its technique." 880 S.W.2d 759, 769 (Tex. Crim. App. 1994) (en banc). The *Emerson* Court did not mention glaucoma or its potential effect on the HGN test. Therefore, we do not consider *Mata* to be authority indicating that glaucoma may cause a person to fail the HGN test.

13

Vollick's car, that Vollick admitted to having several drinks, and that he failed the walk-and-turn test. Both officers testified that, based on Vollick's behavior and odor, they believed he was under the influence of alcohol. Vollick's glaucoma may or may not have contributed to his failing the HGN test, but it does not explain any of these other incriminating facts. Accordingly, even without the allegedly false testimony, the jury was overwhelmingly likely to have found Vollick guilty of the charged offense. There is no "reasonable likelihood" that the testimony affected the judgment of the jury. *See id.*

We conclude that the trial court did not abuse its discretion in denying the motion for new trial. Vollick's fourth issue is overruled.

### III. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS GARZA,
Justice

Do Not Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
23rd day of July, 2015.

14